JENKS, P. J., THOMAS, MILLS and BLACKMAR, JJ., concurred; PUTNAM, J., not voting.

Motion granted, in accordance with opinion.

---

THE J. B. KEPNER COMPANY, Appellant, *v.* WILLIAM E. HUTTON and Others, Copartners, Doing Business under the Firm Name of W. E. HUTTON & Co., Respondents.

First Department, July 13, 1917.

**Bills and notes — suit to recover proceeds of checks of corporation used by president to pay individual debt — duty of person receiving such checks to make inquiry — effect of inquiry which would have resulted in establishing president's authority to use corporate funds.**

Where, in an action brought by a corporation to recover the amount of checks drawn by its president and used by him to pay a personal indebtedness to the defendants, it appears that the president delivered a number of checks of the plaintiff to the defendants, which were credited

by them on the president's personal brokerage account, and that the defendants, owing to the form of the checks, were put upon inquiry as to the president's right so to use the funds of the corporation, they are bound by whatever such an inquiry would have disclosed to them.

A judgment for the defendants is justified where the proof showed that since its incorporation the plaintiff had made the practice of paying the president's individual debts by checks drawn upon the corporation account; that the president and his wife owned practically all the capital stock and that no attempt had ever been made by the plaintiff to distinguish between the corporate funds and personal funds of its president, who was accustomed to deposit his personal money in the name of the corporation. This, because, if an inquiry had been made by the defendants as to the president's authority to use corporate funds, they would have been justified in believing that he was authorized so to do.

DOWLING and PAGE, JJ., dissented.

APPEAL by the plaintiff, The J. B. Kepner Company, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 30th day of December, 1915, upon the decision of the court after a trial before the court without a jury.

*Francis C. Schwab,* for the appellant.

*Sumner B. Stiles,* for the respondents.

SCOTT, J.:

This action is to recover the amount of certain checks upon the banking account of plaintiff paid out to and received by defendants by J. B. Kepner, a former president of plaintiff, in payment of a personal indebtedness under circumstances that, as plaintiff claims, should have warned defendants that said Kepner was unlawfully using the corporation's funds without authority.

It appears that prior to April 10, 1912, said J. B. Kepner carried on business individually as a cotton converter and as sales agent for certain cotton mills. In 1912 he caused the plaintiff corporation to be organized with a capital of $5,000, divided into fifty shares, of which forty-nine were issued to Kepner's wife and one to Kepner himself. To this corporation was transferred the good will of the business formerly carried on by Kepner individually and said corporation continued to carry on the same business under Kepner's

management. During the whole period covered by the transactions complained of in the complaint Kepner and his wife owned all the capital stock, and they together with the bookkeeper, a man named Donohue, who held nominally one qualifying share, were the sole directors. During all that period Kepner alone managed and controlled the corporation, his wife and Donohue not interfering in any way. Prior to the incorporation of the plaintiff and when Kepner, as an individual, was doing the same business (turned over to the company as aforesaid), he had personal bank accounts; but after the incorporation of the plaintiff company the said Kepner had no individual bank account, and when checks made out to him personally were received, it was his uniform custom to indorse these checks and deposit them in the account of the plaintiff corporation; and no attempt was made by the corporation, or by Kepner, to distinguish between the personal funds of Kepner and the funds of the corporation; and all checks received by him, personally, or made out to the order of the corporation, were indorsed by him and deposited in the bank account standing in the corporation's name.

From the time the said company was incorporated, the plaintiff company made a practice of paying J. B. Kepner's individual debts and obligations by checks drawn on the corporation's bank account.

Defendants are brokers dealing on the New York Cotton Exchange, and in February, 1914, Kepner, in his own name, opened an account with them with a view of speculating in cotton futures. From about February 3, 1914, until June 23, 1914, Kepner delivered to defendants in payment of losses and for commissions eleven checks of plaintiff corporation, all of which were duly paid out of the corporation's account. These checks amounted to $4,805, and it is for this sum, with interest, that plaintiff sues. The action is brought by the corporation in its own right, and not, ostensibly at least, for the benefit of its creditors, although the evidence in the case tends to show that the corporation became insolvent and that it has been taken over by and is now owned by the creditors.

The plaintiff's charter authorized it *inter alia* " to act as

mill agents and commission agents on its own account or as brokers. To buy, purchase and deal in cotton goods, and any and all merchandise incidental to the cotton goods business," and it was held by the trial court that said corporation " had ample power, in connection with its business, to buy and deal in contracts for cotton on the New York Cotton Exchange, and the course of conduct of the business of the plaintiff corporation was such that J. B. Kepner had authority to enter into such contracts for and on its behalf." There is much support in the evidence for that finding, and if this fact were known to defendants they could, perhaps, have been justified in believing that Kepner's dealings with them were on behalf of plaintiff and by its authority. We prefer, however, to place our affirmance of the judgment on another ground. The sole question in the case is whether defendants received the checks in good faith and were *bona fide* holders for value. It is self-evident that the nature of their transactions with Kepner and the form of the checks served to put them upon inquiry as to Kepner's right so to use the funds of the corporation, and that they are bound by whatever such an inquiry would have disclosed to them. The rule upon the subject was very clearly stated in *Ward* v. *City Trust Company* (192 N. Y. 61, 69), as follows: " The form of the check in question was notice to the trust company that Umsted was using the property of the corporation of which he was president, to pay the personal debt of himself and Kiefer in apparent violation of its rights [citing cases]. The effect of such notice was to put the trust company upon inquiry to see whether it was about to accept money from one to whom it did not belong in payment of its own claim. The presumption arising from the face of the check was that it belonged to the Hartman Company and that its president had no right to use it to pay his personal debt. The purpose of the law in exacting inquiry under such circumstances, is to see whether the apparent situation is the actual situation, or in other words to learn whether facts exist to rebut the presumption. * * * If, for instance, reasonable inquiry had been made by the trust company and the result had tended to show that the check really belonged to Umsted and Kiefer and not to the Hart-

man Company, or that Umsted was authorized by that company to use it as he proposed, then, even if the fact were otherwise, such inquiry would have tended to rebut the presumption of illegal use and to protect the title of the trust company. The law goes further than this in order to promote the transfer of commercial paper, for it is settled that if no inquiry is in fact made to dispel the presumption, but reasonable inquiry would have led to the discovery of facts which would have dispelled it, the purchaser of the paper is entitled to the benefit thereof the same as if he had learned them by proper investigation."

What then would the defendants have discovered if they had made a reasonable inquiry? They would have discovered, as the trial court has found upon ample evidence, not only that Kepner and his wife were the sole owners of the capital stock of the corporation, and that it was managed by him alone, but also that "From the times mentioned in the complaint, said J. B. Kepner had no individual bank account, and from time to time when checks made out to him personally were received, it was his uniform custom to indorse these checks and deposit them in the account of the plaintiff corporation.

"From the time it was incorporated, plaintiff made a practice of paying J. B. Kepner's individual debts and obligations by checks drawn on the corporation's bank account.

"No attempt was made by the plaintiff or J. B. Kepner to distinguish between the personal funds of J. B. Kepner and the funds of the corporation, and all checks, whether received by J. B. Kepner personally or made out to the order of the corporation, were indorsed by him and deposited in the bank account standing in the corporation's name."

These facts would have served to repel the presumption that Kepner was making an unauthorized use of the corporation's funds, and would have indicated on the contrary that the use he was making of the funds was authorized.

In a very similar case, recently decided by Mr. Justice GREENBAUM, he held that one who had received a corporation check in payment of the personal debt of its treasurer would be protected where an inquiry would have disclosed circumstances similar to those found by the court to have existed

when the checks here in controversy were received by defendants. (*Martindale* v. *De Kay*, 101 Misc. Rep. 728; 166 N. Y. Supp. 405.)   To the same effect is *Ehrlich, Inc.*, v. *Levine* (83 Misc. Rep. 136).

Upon the facts as found by the trial court, and which are amply supported by the evidence, the judgment is right and must be affirmed, with costs to the respondents.

Clarke, P. J., and Davis, J., concurred; Dowling and Page, JJ., dissented.

Judgment affirmed, with costs.