Abramham 1ST. (teller, J.
This is an action for an accounting with respect to a shipment of Formosan sugar which was pledged by the American importer allegedly without authority and subsequently sold by the pledgee to recover the advances made thereon. Plaintiff’s assignor, the Taiwan Sugar Corporation (“ Taiwan ”) is a Taiwan corporation engaged in the manufacture, export and sale of sugar. Defendant Skrod & Co., Inc., a domestic corporation, entered into a contract with Taiwan dated July 24, 1953 for the purchase of “ sugars covered by this contract, to remain in effect for the years 1954 and 1955.” Skrod & Co. is virtually a nominal defendant in this action (it ceased to function after the death in August, 1956 of Edward J. Skrod, its sole stockholder and active officer); the same counsel represent both plaintiff and Skrod & Co. in this action. Plaintiff’s object in suing Skrod & Co. is to establish a claim of liability running through Skrod & Co. to the real defendant sought to be held, Monitz, Wallack and Colodney (“Monitz”), commodity brokers and the pledgee of the sugar in question.
It appears that Skrod & Co. had, since 1954, been financing its importations of Formosan sugar by pledging documents of title *1036 thereto with defendant Monitz, with whom a trading account in futures under the name of Edward J. Skrod was also maintained.
The instant litigation arises from the failure of Skrod & Co. to pay for the last shipment made by Taiwan on December 28, 1955.
In February, 1956 Skrod & Co. pledged with Monitz as security for advances to be made thereon a negotiable bill of lading covering this shipment of 750 metric tons of sugar on board the S. S. Hai Chang. The negotiable bill of lading had been indorsed in blank by Sandys Bao, Taiwan’s New York representative, and delivered to Skrod & Co. (Bao’s authority to make the indorsement is not challenged.) About a week or 10 days later, Skrod & Co. also submitted to Monitz an ‘ ‘ export sales invoice ’ ’ dated December 28,1955 from Taiwan to Skrod & Co. which recited the fact that the 750 metric tons of sugar had been ‘ shipped per S. S. Hai Chang against Contract dated July 24, 1953, and amended on July 29, 1953 and August 24, 1954.” Monitz thereafter advanced to Skrod & Co. the amount of the freight bill .and returned the bill of lading solely to enable the latter to arrange for the storage of the sugar in the New York Free Trade Zone pending certification by the United States Department of Agriculture for entry into the United States under applicable import quotas. Skrod & Co. thereupon obtained and delivered to Monitz negotiable warehouse receipts to replace the negotiable bill of lading. Against this security Monitz subsequently made the following advances: (1) for customs and duties, storage and handling, brokerage and miscellaneous charges — a total, including the afore-mentioned freight bill, of $44,390.71, which advances plaintiff does not question, since they were used for the direct benefit of the subject sugar; (2) $82,000 advanced by Monitz and agreed in writing to be “ secured by negotiable warehouse receipts covering [the subject sugar],” which, though represented by check payable to the order of E. J. Skrod, was indorsed by him and deposited in the account of Skrod & Co. and immediately remitted by the latter to Taiwan in payment of unpaid prior shipments of sugar (it may be appropriate to note at this point a matter which is more fully developed hereinafter— that Skrod did not distinguish between his personal and corporate activities, commingling all assets, and depositing all checks in the one bank account maintained in the name of Skrod & Co.); (3) $23,000 transferred by Monitz, as instructed, from this Skrod & Co. pledge account to the sugar futures trading account maintained in the name of E. J. Skrod, subsequently reduced to $6,500 by repayments totalling $9,000 received from *1037 Skrod & Co. and a retransfer of $7,500 from the futures into the pledge account.
The principal amount in controversy, then, is the $82,000 advanced by Monitz on the security of this sugar. The significant fact about this sum is that it was actually used by Skrod & Co. to pay Taiwan. Taiwan’s complaint that the $82,000 was used by Skrod & Co. to pay for prior shipments rather than for this sugar loses sight of the simple fact that if this advance had not been made by Monitz, the prior invoices would not have been paid by Skrod & Co. It would be a clear case of unjust enrichment to allow plaintiff to recover from Monitz on the claim that this advance was not authorized, while permitting plaintiff’s assignor to retain it. However, the law is adequate to the occasion.
The main issue in this case is the contention of plaintiff that Skrod & Co. did not have title to the sugar nor authority to pledge it except, perhaps, to the extent of advances directly for the benefit thereof, such as for freight, cartage and storage. Plaintiff further argues that, despite Taiwan’s delivery to Skrod & Co. of the negotiable bill of lading indorsed in blank, Monitz was put on notice of such limited authority by the bare reference in the invoice to the amendment dated July 29, 1953, which changed, “ with respect to ” a certain shipment being made at that time, certain provisions of the original contract. The original contract provided that title pass on loading in Formosa and that payment be made in New York on presentation of negotiable shipping documents. The simultaneously executed amendment, on the other hand, provided that title pass only on actual payment, which was to be made after certification for entry within the quota, but that amendment appears to be limited to a specific shipment not here involved. Plaintiff concludes that, since this sugar had not been certified for entry and had not been paid for by Skrod & Co. at the time of Monitz’s advances, Monitz did not acquire a lien for the advances made on the unauthorized pledge by Skrod & Co. It therefore asks that Monitz account to it for the proceeds of sale of the sugar amounting to $133,109.72, less the conceded advances for expenses chargeable directly to this sugar totalling $44,390.71.
The prime fact in the case, glossed over in plaintiff’s argument, is that plaintiff’s assignor by its own affirmative act clothed Skrod & Co. with all the indicia of title to this sugar, so that a purchaser without notice of the alleged limitation of authority would be justified in relying on its apparent ownership of the sugar or, at least, its authority to pledge it. *1038 Although Taiwan had not received payment it delivered to Skrod & Go. a negotiable bill of lading indorsed in blank. The contract, it will be recalled, provided that payment was to be made on presentation of negotiable shipping documents. No explanation is offered why Taiwan should, long before the sugar could be certified for entry and payment become due, deliver to Skrod & Co. a completely negotiable, instead of straight, bill of lading. In so doing, Taiwan was acting neither under the contract nor under the amendment. Evidently Sandys Bao, Taiwan’s agent, had great faith in Skrod and took the risk of investing him with a document universally accepted as evidence of ownership. In any event, this was an indication to any purchaser or pledgee without notice, such as Monitz, that Skrod & Co. could fully dispose of the sugar (Personal Property Law, §§ 217, 226, subd. [d]). Taiwan also gave Skrod & Co., together with the bill of lading, the afore-mentioned export sales invoice which was countersigned by Bao and later submitted to Monitz. This also normally is indicative of the consummation of a sale. Finally, Skrod & C'o. delivered to Monitz negotiable warehouse receipts in a substitution for the. bill of lading. Nothing appears on the face of these documents to put Monitz on notice that Skrod & Co. did not have full authority to pledge or otherwise dispose of the sugar. Moreover, the evidence shows that in fact Monitz knew of no such alleged limitation on Skrod & Co.’s authority as plaintiff now asserts.
Plaintiff argues that the reference in the invoice to the contract and amendments required Monitz to examine those instruments and if it had, it would have learnéd that the amendment of July 29, 1953 reserving title in Taiwan until actual payment (although by its own terms limited to a specific shipment then being" made), was, by virtue of its inclusion by reference in this invoice, applicable to the shipment here in question. If it were necessary to this decision to reach the point, the court would find that the said amendment did not, either by its terms or by reason of Taiwan’s unilateral inclusion of it by reference in the invoice, alter as to future shipments (including the one here in question) the provision of the original contract that title pass upon loading in Formosa. Since the language of both the contract and the amendment are clear and there is no contradiction between the two instruments, the apparent meaning of the language used must be regarded as the one intended. (Schoonmaker v. Hoyt, 148 N. Y. 425, 431.) To do otherwise in this case, “ would be to make an implication *1039 contradict express words of the contract, and that is clearly inadmissible.” (Sabl v. Laenderbank Wien Ag., 30 N. Y. S. 2d 608, 616.) But it is unnecessary to resort to construction. For, even assuming the correctness of plaintiff’s construction concerning the applicability and effect of the amendment, its contention as to Mónita’ duty to inquire is without merit. The invoice states simply that the sugar is “ shipped * * against Contract dated July 24, 1953” (emphasis supplied). It uses the word “ against,” and not a limiting or qualifying term, such as “ subject,” which might put one on notice. The logical interpretation of that reference in its context is merely that this particular shipment is being charged against whatever quantity or commitments for shipment may have been provided in the contract and amendments. Certainly, tliis language would not cause any person, to whom a negotiable bill of lading indorsed in blank had been offered, to suspect that there was any limitation on the power of the offeror to negotiate it. If it were intended that the invoice limit Skod & Co.’s authority to pledge the bill of lading — an inconsistent position in view of the unrestricted nature of the wholly independent and self-sufficient negotiable shipping documents — words of clear warning were required to be placed thereon. Even then, Taiwan could not rely on the fortuitous circumstance that a prospective purchaser or pledgee of the negotiable biff of lading indorsed in blank would ask Skrod & Co. for further confirmation in the form of an invoice, and thereby be put on notice of facts allegedly making the pledge wrongful.
The very fact that a negotiable document has been issued carries with it the implication that an innocent third party is under no duty to inquire into the miderlying rights and obligations of the original parties. As was said in Manufacturers & Traders Trust Co. v. Sapowitch (296 N. Y. 226, 230): “ [The holder] is not bound at his peril to be upon the alert for circumstances which might possibly excite the suspicions of wary vigilance. He does not owe to the party who puts negotiable paper afloat the duty of active inquiry, to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by speculations in regard to the purchaser’s diligence or negligence (Magee v. Badger, 34 N. Y. 247, 249). These principles have often been restated in varying forms and have never been questioned in the decisions of this court ”.
The duty to inquire is not measured in a vacuum or by the mere invocation of abstract principles of law. The court has *1040 taken into consideration the pre-existing business relationship between Monitz and Mr. Skrod and Skrod & Co., the representation by Mr. Skrod to Monitz that he had the authority to pledge the sugar, as well as the concededly excellent reputation of Mr. Skrod in the trade.
The rights of the parties are governed by the fundamental rule of the law merchant evolved through the necessities of expanding trade, set forth in Restatement, Second, Agency (§ 176), as follows: “ § 176. Agent Entrusted with Commercial Document. A disclosed or partially disclosed principal who entrusts an agent with possession of, and a limited authority to deal with, a document representing a chattel or a chose in action in such form that possession of it is commonly regarded as indicating a general power to dispose of it, is subject to the loss of his interests in it by the agent’s unauthorized disposition of it if it comes to the hands of a purchaser without notice that the agent was not authorized to dispose of it.”
Comment b of that section is especially pertinent: “ b. The rule stated in this Section also applies where the agent is permitted to store or to ship goods and to take a warehouse receipt or bill of lading in such form as to indicate that he has a general power of disposition.”
The policy underlying this rule is well stated in Williston on Sales (Vol. 2 [Rev. ed.], § 292, p. 192): “ "Where the document gives the buyer apparent ownership and a third person purchases the goods relying thereon, it seems clear on broad principles of justice that since one of two innocent parties must suffer, he should suffer whose act has brought about the perilous situation. Consequently, the seller ought not to be allowed to recover the goods from the third person.”
Actually, Taiwan’s conduct in delivering to Skrod & Co. a negotiable bill of lading when it knew; or should have realized, that the latter intended to and did finance these sugar purchases, requires the holding that it did in effect authorize the pledging of the sugar in question. Taiwan was apparently relying on Skrod & Co. ’s honesty and credit, in total disregard of the provision in its own contract requiring payment on presentation of bill of lading as well as of the provision in the amendment that title was not to pass until payment was made after entry certification. It appears that Skrod & Co. had on previous occasions pledged Avith Monitz documents of title to sugar shipped by Taiwan. The conclusion is inescapable on all the evidence that Taiwan knew and approved of, or at least acquiesced in, this practice by Skrod & Co. Thus, as early as *1041 July 13, 1953, even prior to the signing of the contract, Skrod & Co. wrote Bao “ to assist us in the financing of the sugar ” by making a change in the arrangements whereby payment would not be due until after entry certification. This letter made plain the intention of Skrod & Co. to secure financing with which to pay Taiwan. Delivery by Taiwan of a negotiable bill indorsed in blank, with knowledge of its intended use as security for advances, compels ihe conclusion that Taiwan actually authorized the pledging of the sugar by Skrod & Co. (Restatement, Second, Agency, § 43.)
Since all advances by Monitz were properly made on the security of this sugar, it is entitled to be reimbursed out of the proceeds of sale thereof, notwithstanding the fact that the $32,000 advance was used by Skrod & Co. to pay for a prior shipment rather than for the current shipment and that the net $6,500 transferred into the futures account was not used by Skrod & Co. to pay Taiwan. The obligation of Monitz was to make advances in accordance with the instructions of the pledgor and apparent owner of the sugar, Skrod & Co. The disposition of the moneys was the responsibility of Skrod & Co.
Monitz realized $133,109.72 from the sale of the sugar. As the sum total of its advances, together with interest thereon, exceeds that amount, it is entitled to judgment on its cross claim against Skrod & Co. for the excess of $5,725.54 and to dismissal on the merits of plaintiff’s cause of action for an accounting.
Plaintiff also seeks to hold Monitz on an alternative ground. It appears that there is due and owing on this sugar to plaintiff from Skrod & Co. the sum of $82,547.01. Accordingly, plaintiff claims that as a creditor of Skrod & Co.— it seems to be the only substantial creditor — it has status to sue under article 10 of the Debtor and Creditor Law to set aside all transfers made by. Monitz from Skrod & Co. pledge accounts to the individual trading account of E. J. Skrod which allegedly rendered the corporation insolvent and unable to pay its creditors.
This theory of recovery was not supported by the proof. Plaintiff wholly failed to establish the insolvency of Skrod & Co., either at the time of the alleged transfers or as the result thereof, or, indeed, at any time.
Moreover, the transfers complained of were not conveyances within the meaning of article 10 of the Debtor and Creditor Law. As previously noted, Skrod made no distinction between his corporate and individual business assets or activities. All his personal transactions were recorded in the corporate books. *1042 He had no personal bank account. All moneys — personal and corporate — were deposited in the corporate bank account. All bills — 'Personal and corporate — were paid from Corporate funds. It appears that the futures trading account was kept in his individual name rather than in the corporate name only because, as a member of the New York Coffee and Sugar Exchange, he was entitled to the benefit of lower commission rates. When he requested and received from time to time moneys out of this trading account, these were invariably deposited in the corporate account. When, as happened, a futures contract was not sold prior to delivery date, the corporation took title to the spot sugar and ultimately sold it and deposited the proceeds in its account. Similarly, Skrod’s trading transactions with three other brokerage firms were entered in the corporate cash receipts and disbursements ledgers.
Skrod and his Corporation were so identified in interest that any transfer of funds from the pledge account to the futures account must be viewed simply as an internal bookkeeping arrangement. The futures account was in fact regarded as a corporate asset.
On this showing Monitz would clearly have been justified in accepting corporate checks for the futures account. (Kepner Co. v. Hutton, 179 App. Div. 130, affd. 226 N. Y. 674.) It must therefore be held to have been justified in transferring on Skrod & Co.’s instructions funds available on its pledges from Formosan sugar into the futures account.
The court does not on these facts reach the question as to whether a broker’s responsibility under similar circumstances might or might not be different if it were shown that the corporation was insolvent or was being rendered insolvent and that the broker had knowledge thereof at the time of the transaction complained of.
Defendant Skrod & Co., in a cross claim, seeks an accounting from defendant Monitz principally with respect to the allegedly improper transfers from the corporate pledge account to the individual futures account. Monitz did account to Skrod & C'o. at regular intervals and the court finds that an account stated was established by Monitz. And in view of the afore-mentioned finding that Skrod and Skrod & Oo. were one and the same and that these transfers were authorized to be made by Skrod & C'o., the cross complaint must be dismissed on the merits.
The complaint is therefore in its entirety dismissed against defendant Monitz on Its merits. Judgment, however, is awarded plaintiff against Skrod & Co. in the sum of $82,547.01, with *1043 interest from March 18, 1957. (This claim was not contested by Skrod & Co.) Judgment is also awarded defendant Monitz on its cross complaint against Skrod & Co. in the sum of $5,725.54, with interest from June 1, 1957. A counterclaim by defendant Monitz seeking damages against plaintiff for the malicious suing out of an injunction was withdrawn at the trial.
Since the court has determined that the complaint should be dismissed as against Monitz on the merits, it need not deal with the defense interposed by Monitz that plaintiff is not entitled to sue because of Taiwan’s failure to obtain a certificate of authority as required by section 218 of the General Corporation Law.
Any motions on which decision was reserved and not specifically disposed of by this decision are denied;
This opinion constitutes the decision of the court in accordance with section 440 of the Civil Practice Act.
Settle. judgment accordingly.