10-5049-cv (L)
Goldman Sachs v. Official Unsecured Creditors Committee

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 3rd day of July, two thousand twelve.

PRESENT:  JOSEPH M. McLAUGHLIN,
          ROBERT D. SACK,
          GERARD E. LYNCH,
                    *Circuit Judges.*

_____

GOLDMAN SACHS EXECUTION & CLEARING,
L.P., FKA SPEAR, LEEDS & KELLOGG, L.P.,
                    *Appellant-Cross-Appellee*,

           v.                                              10-5049-cv (Lead)
                                                           11-2446-cv (XAP)

THE OFFICIAL UNSECURED CREDITORS'
COMMITTEE OF BAYOU GROUP, LLC, et al.,
on behalf of BAYOU GROUP, LLC, BAYOU
MANAGEMENT, LLC, BAYOU ADVISORS,
LLC, BAYOU EQUITIES, LLC, BAYOU
SUPERFUND, LLC, BAYOU NO LEVERAGE
FUND, LLC, BAYOU AFFILIATES FUND,
LLC, BAYOU ACCREDITED FUND, LLC,
                    *Appellee-Cross-Appellant.*[*]

_____

_____

[*] The Clerk of Court is respectfully requested to amend the caption as set forth above.

1

FOR APPELLANT-CROSS-APPELLEE: HOWARD SCHIFFMAN (Eric A. Bensky, *on the brief*), Schulte Roth & Zabel LLP, Washington, DC.

FOR APPELLEE-CROSS-APPELLANT: JOHN G. RICH, (Ross B. Intelisano, Matthew W. Woodruff, *on the brief*), Rich & Intelisano, LLP, New York, NY.

FOR AMICUS-CURIAE: Henry F. Minnerop, Sidley Austin LLP, New York, NY.; Ira D. Hammerman, Kevin M. Carroll, Securities Industry and Financial Markets Association, Washington, DC, *for* Amicus Curiae Securities Industry and Financial Markets Association in support of Appellant-Cross-Appellee.

Appeal from the judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, *J.*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

In 1999, Appellant-Cross-Appellee Goldman Sachs Execution & Clearing, P.C. ("Goldman") began serving as the sole clearing broker and prime broker for a hedge fund named Bayou Fund, LLC. In February 2003, Goldman began serving in the same capacity for four new Bayou hedge funds (collectively, with the original Bayou fund, the "Bayou Funds").[1] The Bayou Funds, it turns out, were run as a massive Ponzi scheme. The scheme collapsed in August 2005, and the Bayou Funds filed petitions for bankruptcy in May 2006. On June 15, 2006, the bankruptcy trustee appointed Appellee-Cross-Appellant The Official Unsecured Creditors' Committee of Bayou Group, LLC (the "Committee") to represent the interests of unsecured

---

[1] The four new Bayou Funds were (1) Bayou Accredited Fund, LLC; (2) Bayou Affiliates Fund, LLC; (3) Bayou No Leverage Fund, LLC; and (4) Bayou Superfund, LLC.

creditors of the debtors.  On May 29, 2008, the bankruptcy court authorized the Committee to "prosecute and/or settle any and all claims the Debtors' estate may have" against Goldman.

Pursuant to an arbitration agreement between the Bayou Funds and Goldman, the Committee prosecuted its claims against Goldman in an arbitration proceeding before the Financial Industry Regulatory Authority ("FINRA").  On June 24, 2010, the arbitration panel rendered an award in favor of the Committee in the amount of $20,580,514.52.  Goldman petitioned the United States District Court for the Southern District of New York to vacate the award, and the Committee cross-petitioned to confirm the award.  The district court denied Goldman's petition to vacate, and granted the cross-petition to confirm the award.  Goldman now appeals that decision, and the Committee cross-appeals the district court's ruling with respect to pre-judgment interest.  For substantially the reasons given by the district court, we affirm its rulings in all respects.  We assume the parties' familiarity with the underlying facts.

Goldman argues that the arbitration award must be vacated because it was rendered in manifest disregard of the law.  Although the Supreme Court's decision in Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 585 (2008) created some uncertainty regarding the continued viability of the manifest disregard doctrine, we have concluded that "manifest disregard remains a valid ground for vacating arbitration awards."  T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339-40 (2d Cir. 2010) (internal quotation marks omitted); see also Schwartz v. Merrill Lynch & Co., 665 F.3d 444, 451-52 (2d Cir. 2011); STMicroelectronics, N.V. v. Credit Suisse Securities (USA) LLC, 648 F.3d 68, 78 (2d Cir. 2011).

3

Our review under the manifest disregard standard, however, "is 'highly deferential' to the arbitrators, and relief on such a claim is therefore 'rare.'" STMicroelectronics, 648 F.3d at 78 (quoting Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 139 (2d Cir. 2007)); see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003) (noting that we have found manifest disregard for the law only in "those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent"). We cannot "vacate an arbitral award merely because [we are] convinced that the arbitration panel made the wrong call on the law." Wallace v. Buttar, 378 F.3d 182, 190 (2d Cir. 2004). Indeed, an arbitral award must "be enforced, despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached." Id. (internal quotation marks omitted).

In applying the manifest disregard standard, we consider "first, 'whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable,' and, second, whether the arbitrator knew about 'the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it.'" Jock v. Sterling Jewelers Inc., 646 F.3d 113, 121 n.1 (2d Cir. 2011) (quoting Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 209 (2d Cir. 2002)). Arbitrators "obviously cannot be said to disregard a law that is unclear or not clearly applicable. Thus, misapplication of an ambiguous law does not constitute manifest disregard." Duferco, 333 F.3d at 390; see also STMicroelectronics, 648 F.3d at 78 (noting that we will not vacate an arbitral award unless "a party clearly demonstrates that the panel intentionally defied the law" (internal quotation marks omitted)). Where, as here, an arbitration panel does "not explain the reason for [its] decision, we will uphold it if we can discern any valid ground for it." STMicroelectronics, 648 F.3d at 78.

4

The manifest disregard standard is, by design, exceedingly difficult to satisfy, and Goldman has not satisfied it in this case. We turn first to the $6.7 million that was transferred into the four new Bayou funds from outside accounts from June 2004 to June 2005. The Committee alleged in the arbitration that these deposits were "fraudulent transfers" under 11 U.S.C. § 548, and were recoverable from Goldman because it was an "initial transferee" under 11 U.S.C. § 550(a). Goldman does not contest that the transfers were fraudulent, or even that it was on inquiry notice of the fraud, but it vigorously argues that it is not an "initial transferee" under Section 550(a), and that the panel manifestly disregarded the law in concluding that it was.

We agree with the district court that Goldman's argument for manifest disregard fails because the most recent case on point in the Southern District of New York, where the arbitration was held, "cuts in favor of the Creditors' Committee." Goldman Sachs Execution & Clearing v. Official Unsecured Creditors' Comm. of Bayou Group, LLC, 758 F. Supp. 2d 222, 228 (S.D.N.Y. 2010). The facts in that case, Bear, Stearns Securities Corp. v. Gredd (In Re Manhattan Inv. Fund, Ltd.), 397 B.R. 1 (S.D.N.Y. 2007), bear striking similarities to the facts here. The debtor in Gredd was a hedge fund involved in a Ponzi scheme that deposited monies into a margin account at Bear Stearns, and the bankruptcy trustee sought to recover from Bear Stearns the amount the debtor hedge fund had transferred into its margin account in the year prior to filing a bankruptcy petition. Id. at 4-5. The Gredd court distinguished cases holding that "mere conduits" of funds do not quality as initial transferees, noting that the hedge funds transfers "did not go from the Fund's bank account to the account at Bear Stearns in order to be transferred to a third party." Id. at 17 (citing In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, 130 F.3d 52 (2d Cir. 1997); Bonded Fin. Servs. v. European Am.

5

Bank, 838 F.2d 890 (7th Cir. 1988)). Moreover, the Gredd court found Bear Stearns had "dominion and control" over the transferred funds because, although Bear Stearns "was not able to use the transfers to make a separate *profit*," it was able to "use the funds to protect itself" from suffering losses due to the hedge fund's short trading. Id. at 18; see also id. at 21 (emphasizing that "the degree of decision-making authority Bear Stearns possessed with respect to the funds demonstrates a level of 'dominion and control' sufficient to create transferee liability").

Much like Bear Stearns, Goldman possessed considerable control with respect to Bayou's deposits under the relevant account agreements. Not only did Goldman possess a "security interest for payment of all of [Bayou's] obligations and liabilities," but it also had the rights (1) to require the Bayou Funds "to deposit cash or collateral with [Goldman] to assure due performance of open contractual commitments"; (2) to require the Bayou Funds to maintain such "positions and margins" as Goldman deemed "necessary or advisable"; (3) to "lend either to itself or to others any of [Bayou's] securities held by [Goldman] in a margin account"; and (4) to "liquidate securities and/or other property in the account without notice . . . to ensure that minimum maintenance requirements are satisfied." Joint Appendix at 135-36 (Bayou Superfund LLC account agreement). These provisions – which are similar, if not identical, to the provisions at issue in Gredd – gave Goldman broad discretion over the funds in the Bayou accounts and allowed Goldman to "use the funds to protect itself." Gredd, 397 B.R. at 18. While we have not previously endorsed the district court's decision in Gredd – and do not do so here – neither have we rejected it. It is enough, under the "manifest disregard" standard, for us to note that Gredd reveals considerable uncertainty as to whether cases like this one come within an exception to the "mere conduit" principle of In re Finley, Kumble on which Goldman relies.

6

Under these circumstances, we cannot conclude that the arbitrators manifestly disregarded the law in applying the legal principles set forth in Gredd to impose transferee liability on Goldman.

Nor did the arbitrators manifestly disregard the law with respect to the $13.9 million in transfers from the original Bayou fund to the four new Bayou funds on March 5, 2003. The Committee asserted in the arbitration that these transfers were fraudulent conveyances under New York's Debtor and Creditor Law.[2] In this appeal, Goldman argues that the transfer of money from the original Bayou fund to the four new Bayou funds was not a "conveyance" because all the funds were really just a single entity, and were treated as such for purposes of the bankruptcy proceedings.

We agree with the district court that the "two cases Goldman Sachs cites in support of this theory are hardly dispositive." Goldman Sachs, 758 F. Supp. 2d at 227. One of those decisions, Feltman v. Gulf Bank, No. 02-1514-bk (Bankr. S.D. Fla. Oct. 1, 2003), was a bankruptcy court decision from another circuit construing federal law, not New York law, and thus can hardly be deemed controlling law. The other case, B.W. Dyer & Co. v. Monitz, Wallack & Colodney, 184 N.Y.S.2d 445, 453 (Sup. Ct. New York Co. 1959), was a single trial court decision from half a century ago that involved an individual commodities dealer who commingled funds between his personal and corporate accounts, leading the trial court to hold that transfers between the accounts were not conveyances. Here, by contrast, Goldman observed all corporate formalities with respect to the Bayou hedge funds, raising a question of whether the

---

[2] The Bankruptcy Code provides that a bankruptcy trustee may "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law." 11 U.S.C. § 544(b). As we have noted, "[a]pplicable law includes various state fraudulent conveyance statutes." In re NextWave Personal Commc'ns, Inc., 200 F.3d 43, 49 (2d Cir. 1999).

7

Bayou funds can properly be treated as a single entity for purposes of the transfers. The district court characterized that as a factual question. To the extent it is properly so characterized, it lay within the arbitrators' province to answer it. But even if Goldman is correct in characterizing it as a legal question, Goldman has identified no clear, on-point authority governing it, and thus Goldman has failed to satisfy the difficult standard for demonstrating that the arbitrators manifestly disregarded the law.

Goldman also argues that the arbitration panel manifestly disregarded the law because the transfers between the Bayou funds cannot constitute conveyances to Goldman under New York law. As the Committee notes, however, New York law provides for a broad definition of "conveyance," including "every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance." N.Y. Debt. & Cred. Law § 270. Thus, as the Committee contends, there is a colorable argument that each time funds were moved from one Bayou account to another, a new security interest was created, and a conveyance to Goldman thus occurred. Again, we need not, and do not, decide whether we would agree with that argument if the issue were ours to decide. Goldman points us to no decision by a New York court suggesting that these transfers would not be treated as conveyances to Goldman. See Appellant-Cross-Appellee's Br. at 48-50. Thus, even if Goldman's argument might have merit were we addressing it de novo, Goldman cannot satisfy the extraordinarily demanding showing required to prove manifest disregard by the arbitration panel. See Duferco, 333 F.3d at 390 (an arbitrator "obviously cannot be said to disregard a law that is unclear" and that "misapplication of an ambiguous law does not constitute manifest disregard"); STMicroelectronics, 648 F.3d at 78 (a party seeking to vacate an arbitral

8

award must show that "the panel intentionally defied the law" (internal quotation marks omitted)).

Much the same is true for Goldman's argument that the arbitration award permitted the Committee to obtain double recoveries. As the district court recognized, the accounting for the Bayou Funds was complex, and the arbitration panel's apparent conclusion that Goldman had failed to prove that the funds were returned on a dollar-for-dollar basis was therefore a factual finding to which we owe deference. See Goldman Sachs, 758 F. Supp. 2d at 229.

Finally, with respect to the Committee's cross-appeal, we affirm the district court's determination that prejudgment interest should be awarded according to the federal rate set forth in 28 U.S.C. § 1961, rather than the New York statutory rate. We have recognized that while there is "no federal statute that purports to control the rate of prejudgment interest," the post-judgment rate set forth in Section 1961 may be suitable for an award of prejudgment interest "depend[ing] on the circumstances of the individual case." Jones v. UNUM Life Ins. Co. of Am., 223 F.3d 130, 139 (2d Cir. 2000). Like the district court, we find the federal rate appropriate because the Committee's claims arose under federal bankruptcy law. See In re CNB Int'l, Inc., 393 B.R. 306, 335-36 (Bankr. W.D.N.Y. 2008) (applying rate established in Section 1961 to prejudgment interest in bankruptcy proceeding and holding that "the plaintiffs may not recover interest based per se on the New York legal rate"). Further, as Goldman notes, the Committee has waived its argument that FINRA Rule 12904(j) requires application of New York's rate because the Committee never presented it to the district court.

We have considered all of the parties' remaining attacks on the district court's judgment and find them to be without merit.  Accordingly, we AFFIRM the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk