DUFERCO INTERNATIONAL STEEL TRADING, Petitioner–Appellant,

v.

T. KLAVENESS SHIPPING A/S, Respondent–Appellee.

Docket No. 02–7238.

United States Court of Appeals, Second Circuit.

Argued Nov. 1, 2002.

Decided June 24, 2003.

Robert P. Stein, New York, New York (Greenberg Traurig, LLP, New York, New York; Stanley McDermott III, Piper Rudnick LLP, New York, New York, of counsel), for Petitioner–Appellant.

John D. Kimball, New York, New York (Healy & Baillie, LLP, New York, New York, of counsel), for Respondent–Appellee.

Before: FEINBERG, CARDAMONE, and SACK, Circuit Judges.

CARDAMONE, Circuit Judge.

This appeal stems from arbitration proceedings arising under a shipping contract between Duferco International Steel Trading Co. (Duferco or appellant) and T. Klaveness Shipping A/S (Klaveness). Duferco appeals from an order of the United States District Court for the Southern District of New York (Swain, J.), entered February 20, 2002, denying its petition to vacate, in part, an arbitration award and granting Klaveness' cross-petition for confirmation of the award.

In its petition to vacate the arbitral award, Duferco relies on the doctrine of manifest disregard of the law. For us to vacate an arbitral award on the grounds of manifest disregard of the law—a step we very seldom take—we must be persuaded that the arbitrators understood but chose to disregard a clearly defined law or legal principle applicable to the case before them. The error must be so palpably evident as to be readily perceived as such by the average person qualified to serve as an arbitrator. Any plausible reading of an award that fits within the law will sustain it. Here we believe there is such a plausible reading. Hence, we affirm.

## BACKGROUND

### A. *Facts*

On November 30, 1993, Duferco contracted with Klaveness to charter a seago-

ing vessel to carry a cargo of steel slabs from Taranto, Italy, to New Orleans, Louisiana. Duferco's contract with Klaveness was in the form of a voyage charter that covered only the specific voyage set out in the document. The voyage charter provided that the steel would be loaded onto Klaveness' vessel at "one(1) safe port/safe berth Taranto."

To fulfill its charter with Duferco, Klaveness in turn chartered the M.V. ARISTIDIS from its owner, Lifedream Shipping Company, Ltd. (Lifedream). Klaveness chartered the ARISTIDIS on January 3, 1994 by means of a time charter, a type of shipping agreement that allows a party to use an owner's vessel for a specified period of time. Klaveness' time charter with Lifedream allowed use of the ARISTIDIS for two to four months, plus or minus ten days at Klaveness' option. In addition, the time charter contained a safe-berth warranty, which required that the vessel trade via "safe port(s), safe berth(s), [and] safe anchorage(s)." In January and February 1994, while the ARISTIDIS was moored at the port of Taranto, its crew loaded aboard her the steel slabs for shipment to New Orleans. Due to seasonal swells and back waves at Taranto, the crew of the ARISTIDIS experienced major difficulties in the loading operation resulting in damage to the mooring equipment and extra costs from measures taken to keep the vessel stable.

### B. *London Arbitration*

Lifedream, as a result of the difficulties encountered in Taranto, sought arbitration against Klaveness in London to recover for the damages and extra costs incurred (London arbitration). The London arbitrators found Klaveness liable for these damages because it had breached the safe-berth warranty by mooring the ARISTID-IS where sea conditions made the port unsafe.

■ Klaveness moved to vouch Duferco into the London arbitration to obtain indemnification. Vouching-in is a common law procedural device that allows a party to arbitration to join a nonparty alleged indemnitor, referred to as the vouchee, by notifying the nonparty of the pendency of an arbitration that might obligate the vouchee to indemnify the defendant. *See SCAC Transp. (USA), Inc. v. S.S. Danaos*, 845 F.2d 1157, 1161–62 (2d Cir.1988); *see also Washington Gaslight Co. v. Dist. of Columbia*, 161 U.S. 316, 329–30, 16 S.Ct. 564, 40 L.Ed. 712 (1896); *Universal Am. Barge Corp. v. J–Chem, Inc.*, 946 F.2d 1131, 1138 (5th Cir.1991). Vouching-in is used where the vouchee cannot be impleaded because of defects in personal jurisdiction. The purpose of this legal device is to avoid duplicative litigation and the attendant possibility of inconsistent results. *SCAC Transp. (USA), Inc.*, 845 F.2d at 1162.

■ Once notified, the vouchee has the option of joining the arbitration to defend the action. If the vouchee refuses to join, it may nonetheless be bound by the result in any subsequent litigation by principles analogous to collateral estoppel. *Washington Gaslight*, 161 U.S. at 329–30, 16 S.Ct. 564. For the vouchee to be bound, the party seeking to join the vouchee must be able to represent that party's interests fully and fairly in the arbitration. *Universal*, 946 F.2d at 1139–40.

Duferco declined to be vouched into the London arbitration, and on June 24, 1997 the arbitration panel found against Klaveness for all expenses and damages incurred at the port of Taranto. The award amounted to $150,000 in damages plus $37,900.50 in interest (London award).

## C. *New York Arbitration*

Klaveness thereafter began arbitration in New York seeking, *inter alia,* full indemnification from Duferco for the London award to Lifedream that it was obligated to pay, as well as for attorneys' and arbitrators' fees from both arbitrations. At the arbitration hearing, Klaveness maintained that the warranty in its charter with Duferco—stating that it would load at "one(1) safe port/safe berth Taranto"—was similar to the one included in the charter between Klaveness and Lifedream, which provided that the vessel trade "via safe port(s), safe berth(s), [and] safe anchorage(s)," and therefore declared that vouching-in had been appropriate and that Duferco could thus be bound by the London award based on collateral estoppel principles.

⬛ Duferco did not challenge the findings of the London arbitrators, but it countered that collateral estoppel could not apply because significant differences between the time and voyage charters made the sweep of Klaveness' liability under its time charter with Lifedream far greater than Duferco's liability under its voyage charter with Klaveness. Essentially, Duferco asserted the Klaveness–Duferco voyage charter specifically waived any safe-berth warranty. Under settled principles of maritime law, a voyage charter that names a specific port relieves the charterer of liability for damage arising from conditions at that port so long as those conditions were reasonably foreseeable. *See Tweedie Trading Co. v. N.Y.&B. Dyewood Co.,* 127 F. 278, 280–81 (2d Cir.1903); *see also* 2A *Benedict on Admiralty* § 175, at 17–26 (7th ed. 2002). Since the named port of Taranto had predictable seasonal swell conditions, Duferco insisted the safe-berth warranty had been waived, and it therefore had no liability for damages occurring there.

Duferco further averred that it should not be bound by any findings of the London arbitrators because its interests could not have been fully and fairly represented in the London arbitration. It argued that since Klaveness could not advance the named-port argument, as Duferco could have, to relieve itself of liability, Klaveness could not have fully and fairly represented its interests in the London arbitration.

A divided panel of the New York arbitrators found for Klaveness in an arbitration decision and award entered on April 18, 2001 (New York award). The majority found that Klaveness did not waive the safe-berth warranty by agreeing with Duferco to load the ship at Taranto, and that the safe-berth warranties of both charters were sufficiently identical for vouching-in. The panel therefore found Duferco to be bound by the outcome of the London arbitration with respect to the damage portion of the London award and ordered it to indemnify Klaveness for the amount Klaveness paid Lifedream in satisfaction of the London award.

The panel went on to rule nonetheless that collateral estoppel principles prevented Klaveness from collecting attorneys' and arbitrators' fees from Duferco for the London arbitration. The majority reasoned, somewhat confusingly, that "[i]nasmuch as the London arbitrators did not consider the safe-berth warranties of the voyage charter, as properly not before them, no 'previous determination' had been made, and therefore, Klaveness must not be permitted to now use the London award against Duferco offensively for vouching-in or collateral estoppel purposes." On its own motion, the arbitration panel awarded Klaveness $120,000 as an allowance toward attorneys' fees and expenses for the New York arbitration. The panel majority made several other determinations of liability related to events at the port of New

Orleans. Neither party contests these additional determinations and, in any event, they are not relevant to this appeal.

### D. District Court Proceedings

Following the conclusion of the New York arbitration, Duferco, as noted, petitioned the Southern District to vacate that portion of the arbitration award compelling it to indemnify Klaveness for the London arbitration. The district court denied the petition and confirmed the award. *See Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 184 F.Supp.2d 271, 272 (S.D.N.Y.2002). Duferco appeals.

## DISCUSSION

### I Standard of Review

■ We review a district court's decision to confirm an arbitration award *de novo* to the extent it turns on legal questions, and we review any findings of fact for clear error. *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 208 (2d Cir.2002).

■ It is well established that courts must grant an arbitration panel's decision great deference. A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law. The Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*, which defines federal policy on arbitration proceedings, permits vacatur of an arbitration award in only four specifically enumerated situations, all of which involve corruption, fraud, or some other impropriety on the part of the arbitrators.[1]

■ In addition to the grounds afforded by statute, we permit vacatur of an arbitral award that exhibits a "manifest disregard of law." *See, e.g., Goldman v. Architectural Iron. Co.*, 306 F.3d 1214, 1216 (2d Cir.2002); *Westerbeke*, 304 F.3d at 208. Appellant Duferco does not advance statutory grounds for vacating the New York arbitration award. It argues instead that the New York arbitrators manifestly disregarded the law.

### II Manifest Disregard of the Law

#### A. An Overview

The manifest disregard standard finds its origins in dicta from *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), *overruled on other grounds, Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 485, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). The Supreme Court there stated that "the interpretations of the law by the arbitrators *in contrast to manifest disregard* are not subject, in the federal courts, to judicial review for error in interpretation." 346 U.S. at 436–37, 74 S.Ct. 182 (emphasis added). From this statement we have inferred that in addition to the statutory grounds set forth in the FAA, an arbitral award may be vacated if manifest disregard of the law is plainly evident from the arbitration record.

---

1. The FAA allows vacatur of an arbitral award (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

■ Our review under the doctrine of manifest disregard is "severely limited." *Gov't of India v. Cargill Inc.*, 867 F.2d 130, 133 (2d Cir.1989). It is highly deferential to the arbitral award and obtaining judicial relief for arbitrators' manifest disregard of the law is rare.

We first mentioned this standard in *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir.), *cert. denied*, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960). And, since 1960 we have vacated some part or all of an arbitral award for manifest disregard in the following four out of at least 48 cases where we applied the standard: *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 204 (2d Cir.1998) (finding manifest disregard of law, evidence, or both because of great weight of evidence of age discrimination under ADA); *New York Telephone Co. v. Communication Workers of America*, 256 F.3d 89, 92–93 (2d Cir.2001) (per curiam) (vacating portion of award ordering payments found to be illegal and contrary to public policy under Circuit precedent); *Fahnestock & Co., Inc. v. Waltman*, 935 F.2d 512, 519 (2d Cir.1991) (vacating portion of arbitral award mandating punitive damages as contrary to New York law prohibiting arbitrators from ordering punitive damages); *Perma–Line Corp. of America v. Sign Pictorial & Display Union*, 639 F.2d 890, 894–96 (2d Cir.1981) (remanding arbitration award based on an illegal contract provision, with possibility of confirmation if arbitrators could justify illegal provision).

All of the four cases finding manifest disregard, except *Halligan*, involved an arbitral decision that exceeded the legal powers of the arbitrators. In those cases, it is arguable that manifest disregard need not have been the basis for vacating the award, since vacatur would have been warranted under the FAA. Our reluctance over the years to find manifest disregard is a reflection of the fact that it is a doctrine of last resort—its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply. It should be remembered that arbitrators are hired by parties to reach a result that conforms to industry norms and to the arbitrator's notions of fairness. To interfere with this process would frustrate the intent of the parties, and thwart the usefulness of arbitration, making it "the commencement, not the end, of litigation." *Burchell v. Marsh*, 58 U.S. (17 How.) 344, 349, 15 L.Ed. 96 (1854).

### B. *Application of the Doctrine*

■ Perhaps because we so infrequently find manifest disregard, its precise boundaries are ill defined, although its rough contours are well known. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir.1986). We know that it is more than a simple error in law or a failure by the arbitrators to understand or apply it; and, it is more than an erroneous interpretation of the law. *See Westerbeke*, 304 F.3d at 208; *see also Folkways Music Publishers., Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir.1993). A party seeking vacatur bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it. *Merrill Lynch*, 808 F.2d at 933; *see also Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 28 (2d Cir.2000), *cert. denied*, 531 U.S. 1075, 121 S.Ct. 770, 148 L.Ed.2d 669 (2001).

■ The above principles, by extension, lead us to infer that the application of the manifest disregard standard involves at least three inquiries. First, we must

consider whether the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators. *See Westerbeke,* 304 F.3d at 209; *Merrill Lynch,* 808 F.2d at 934. An arbitrator obviously cannot be said to disregard a law that is unclear or not clearly applicable. Thus, misapplication of an ambiguous law does not constitute manifest disregard.

■ Second, once it is determined that the law is clear and plainly applicable, we must find that the law was in fact improperly applied, leading to an erroneous outcome. We will, of course, not vacate an arbitral award for an erroneous application of the law if a proper application of law would have yielded the same result. In the same vein, where an arbitral award contains more than one plausible reading, manifest disregard cannot be found if at least one of the readings yields a legally correct justification for the outcome. *See Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 13 (2d Cir.1997) (citing *Matter of Andros Compania Maritima, S.A. of Kissavos,* 579 F.2d 691, 704 (2d Cir.1978)). Even where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case. *Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211, 1216 (2d Cir.1972); *see also Siegel v. Titan Indus. Corp.,* 779 F.2d 891, 893–95 (2d Cir.1985) (per curiam).

■ Third, once the first two inquiries are satisfied, we look to a subjective element, that is, the knowledge actually possessed by the arbitrators. In order to intentionally disregard the law, the arbitrator must have known of its existence, and its applicability to the problem before him. *Merrill Lynch,* 808 F.2d at 933. In determining an arbitrator's awareness of the law, we impute only knowledge of governing law identified by the parties to the arbitration. *DiRussa v. Dean Witter Reynolds Inc.,* 121 F.3d 818, 823 (2d Cir. 1997), *cert. denied,* 522 U.S. 1049, 118 S.Ct. 695, 139 L.Ed.2d 639 (1998). Absent this, we will infer knowledge and intentionality on the part of the arbitrator only if we find an error that is so obvious that it would be instantly perceived as such by the average person qualified to serve as an arbitrator. *Merrill Lynch,* 808 F.2d at 933. We undertake such a lenient subjective inquiry in recognition of the reality that arbitrators often are chosen for reasons other than their knowledge of applicable law, and that it is often more important to the parties to have trustworthy arbitrators with expertise regarding the commercial aspects of the dispute before them. *See Goldman,* 306 F.3d at 1216.

### III Analysis of the Doctrine in the Present Case

#### A. *Clear Applicability of Law Under Manifest Disregard Test*

■ Examining the first prong of the manifest disregard inquiry, we conclude that the significant principles of law relevant to the case at hand are clearly defined and plainly applicable. Neither party contests that a party vouched into an arbitration may be bound by any determination made in the arbitration, even if the vouchee elects not to participate and defend. *See SCAC Transp. (USA), Inc.,* 845 F.2d at 1162–63; *Universal,* 946 F.2d at 1136. The principle allowing a vouchee to be bound by an arbitration in which it does not participate is analogous to collateral estoppel. Accordingly, the same due process and fairness considerations that govern the application of collateral estoppel in court proceedings govern it in arbitration as well. *See Universal,* 946 F.2d at 1136. This means that collateral estoppel cannot be used offensively against a party with

respect to issues not fully and fairly litigated or issues which are not necessary to a final disposition. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332–33, 99 S.Ct. 645, 58 L.Ed.2d 552, (1979); *Blonder–Tongue Lab., Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). This principle is well recognized in our law, and was plainly known both by appellants and the New York arbitrators as evidenced by the arbitrators' written decision.

In the context of this case, offensive collateral estoppel could not be used by Klaveness against Duferco for preclusion purposes unless the issue involving the safe-berth warranties under consideration in the New York proceeding was identical to the corresponding issue fully and vigorously litigated in London. The London arbitrators' conclusions about the safe-berth warranty must also have been necessary to its judgment. In addition, there must have existed no special circumstances that would render preclusion inappropriate or unfair. *Parklane Hosiery*, 439 U.S. at 326–32, 99 S.Ct. 645; *Universal*, 946 F.2d at 1136.

Yet, the fact that the applicable rules of law here were clear and recognized by the arbitrators does not end the inquiry. We must also examine whether the principles were misapplied, yielding an improper result. In doing so, we bear in mind that even a "barely colorable" justification for the outcome reached will save an arbitral award. *See Willemijn Houdstermaatschappij*, 103 F.3d at 13.

## B. *Application of Law By New York Arbitrators*

The precise rationale employed by the New York arbitrators is difficult for us to discern. The panel majority found first that the vouching-in procedure was proper, and then went on to rule that because the safe-port/safe-berth warranties in both the time and voyage charters were sufficiently identical, appellant is bound by the outcome of the London arbitration. The panel then continued to make what appears to be a separate finding that appellant warranted the safety of the berth and Klaveness had waived that warranty when it agreed to Taranto. The opinion goes on to recount the London arbitrators' finding that the conditions at the unsafe berth caused the damage, and that Klaveness' ordering of the vessel to that berth caused its breach with Lifedream. The arbitrators then state that "[h]aving declined to assume the defense in the original action, Duferco is bound by that decision and is liable to indemnify Klaveness."

But later, when discussing legal fees and costs sought by Klaveness, the arbitrators take a different tack and state that the London arbitrators "did not consider the safe-berth warranties of the voyage charter" and made no "previous determination" as to them, hence, concluding that "Klaveness must not be permitted to now use the London award against Duferco offensively for vouching-in or collateral estoppel purposes."

Such reasoning appears to contradict what the panel had just held on the damage issue. On that issue collateral estoppel based on "sufficiently identical" charter provisions, barred appellant's arguments. But the panel thereafter refused to apply collateral estoppel to Klaveness' request for attorney fees, concluding that the voyage charter had not even been before the London arbitrators, thereby finding the voyage charter not identical to the time charter. The dissenting arbitrator lends support to this reading, resting his analysis on the fact that the vouching-in procedure was inappropriate because, in his opinion, the time and voyage charters were significantly different.

Reading the arbitral award in this way would imply a misapplication of the law, as Duferco asserts, because if the warranties were identical, collateral estoppel should be applied to both liability and attorneys' fees; if the charter provisions were different, then collateral estoppel could not be applied to either, because Klaveness could not in such case have presented a defense of waiver of the safe-berth warranty, and therefore Klaveness in the London arbitration could not have fully and fairly represented Duferco's interest. Either way, appellant insists the arbitrators' split decision indicates a misapplication of laws that the arbitrators seem to have understood.

### C. *Plausible Reading of Award*

 Notwithstanding the forgoing interpretation, another reading of the New York arbitral award, one advanced by the district court, makes sense of the arbitral opinion. That court believed the arbitrators' opinion could be read to include an independent finding that the two charters were so "substantially identical" as to their damage liability provisions that Duferco could be made to indemnify Klaveness. This is supported by the arbitrators' statement that they "do not find Klaveness to have waived the safe berth warranty." Once this determination was made, the New York arbitrators could then properly have used collateral estoppel to import the London arbitrators' findings of *fact* regarding liability against Klaveness, which were certainly fully and fairly litigated in London. These findings of fact could in turn be applied to Duferco's "substantially

identical" safe-berth warranty, so determined independently in New York, to impute liability as Klaveness' indemnitor.[2]

The New York arbitrators could have found that the time and voyage charters were *not* "sufficiently identical" for purposes of finding an obligation to pay attorneys' and arbitrators' fees, and that no finding of the London arbitrators could be imported to support such an award. Since collateral estoppel is issue specific, it is not inconsistent to find it applicable to one issue, but not to another in the same proceeding. This plausible reading of the award resolves its apparent contradiction. *See Willemijn Houdstermaatschappij*, 103 F.3d at 13.

Duferco contests the forgoing reading of the award, stating that it does not reflect the arguments originally made by appellees before the panel. However, whether appellees actually raised the issues reflected in the district court's reading of the award is immaterial. In construing an arbitral award we look only to plausible readings of the award, and not to probable readings of it. Even absent a plausible reading free of error, we would confirm the award if we independently found legal grounds to do so.

Finally, the arbitrators' award was not irrational or inexplicable, as appellant contends. Although it only arguably conforms to legal standards, the award evinces the arbitrators' desire not to saddle Klaveness with the burden of Duferco's decision to order the ARISTIDIS into unsafe waters. In any event, it is not our role to substitute our judgment for those of arbitrators hired by the parties—this is

---

2. We express no view on the correctness of the arbitrators' determination regarding the safe-berth/safe-port warranties. Appellants argue strenuously that it is irrelevant to their appeal, and we will treat it as such. Moreover, it is doubtful that the arbitrators' application of the law on this issue would rise to manifest disregard, since there is no evidence in the record regarding the subjective knowledge of the arbitrators on the issue either way. The fact that the findings regarding the safe-berth warranties were made, however, is relevant to the extent that it may be part of the rationale employed by the arbitrators to justify using the London award against Duferco.

why our standard for vacatur is so very high. We review only for a clear demonstration that the panel intentionally defied the law. We find no such evidence here and hence must confirm the award.

## IV Allocation of Fees and Expenses

In a footnote in its brief on appeal, and by implication, appellant maintains that it should only have to pay half of the fees and expenses awarded by the New York panel. Duferco reasons that half of those expenses relate solely to liability from the London award, for which it contends it should not be liable. Gambling on the outcome of this litigation, appellant has unilaterally decided to pay only one half of the $120,000 award made by the arbitrators. Since our holding effectively confirms that award, Duferco is now bound to pay the remaining portion of that award.

## CONCLUSION

Accordingly, having found no manifest disregard of the law, the judgment of the district court confirming the arbitral award is affirmed.