**Warren A. HARDY, Petitioner–Appellee,**

v.

**WALSH MANNING SECURITIES, L.L.C. and Frank James Skelly, III, Respondents–Appellants,**

and

**Wesley A. Rusch, Respondent.**

Docket No. 02–9156.

United States Court of Appeals, Second Circuit.

Argued: June 25, 2003.

Decided: Aug. 19, 2003.

Daniel Gildin, (David W. Oppenheimer, on the brief), Kaufmann, Feiner, Yamin, Gildin & Robbins LLP, New York, N.Y. for Petitioner–Appellee.

Douglass A. Cooper (Joseph R. Harbeson, on the brief), Ruskin Moscou Faltischek, P.C., Uniondale, New York for Respondent–Appellant Frank James Skelly, III.

Before: STRAUB, POOLER, Circuit Judges, HURD, District Judge.[1]

STRAUB, Circuit Judge, dissented and filed opinion.

POOLER, Circuit Judge.

Respondent–Appellant Frank James Skelly, III appeals from the September 4, 2002 judgment of the U.S. District Court for the Southern District of New York (Lynch, J.), granting Petitioner–Appellee Warren A. Hardy's motion to confirm an arbitration award, and denying Skelly's and Respondent–Appellant Walsh Manning Securities, L.L.C.'s cross-motion to vacate the award. Skelly also appeals from the September 6, 2002 order denying his motion for reconsideration. Walsh Manning filed a Notice of Appeal, but has not pursued its appeal. We therefore affirm the district court's confirmation of the arbitration as it applies to Walsh Manning.

## FACTS

Hardy, a British national, opened an investment account in 1997 at the Westbury, Long Island branch office of Walsh Manning, a New York City brokerage firm. Skelly is Walsh Manning's "Chief Executive Officer," although it is uncontested that he is actually an employee of Walsh Manning, not an officer. Hardy's account was handled by Barry Cassese, who recommended stocks and made trades on Hardy's behalf.

In November 1998, Hardy filed a Statement of Claim with the National Association of Securities Dealers (NASD) claiming that Cassese, Skelly, and Walsh Manning, among others, engaged in various improprieties with regard to his account. In brief, Hardy charged that the respondents

---

1. The Honorable David N. Hurd of the United States District Court for the Northern District of New York sitting by designation.

had misrepresented the fiscal health of certain companies whose stock Hardy was urged to buy, and did not disclose that these securities were "house stocks", which Walsh Manning had an interest in selling.

Before Hardy's claim proceeded to arbitration, Cassese agreed to settle with Hardy for $250,000.00. The settlement agreement also provided that Cassese would testify at any subsequent arbitration hearing with respect to Hardy's claims against the other respondents.[2]

The NASD arbitration panel ("the Panel") consisted of three members, only one of whom is an attorney. The Panel's award was based upon an extensive documentary record and twenty-five days of testimony. Cassese testified extensively, charging that the malfeasance with respect to Hardy's account was undertaken at the behest, or with the connivance, of Walsh Manning and Skelly.

The Panel issued its award on February 2, 2002 ("the Award"). In the section of the Award relevant to this appeal, the Panel stated as follows:

After considering the pleadings, the testimony and evidence presented at the hearing, and the post-hearing submissions, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1. Respondents Walsh Manning and Skelly be and hereby are jointly and severally liable for and shall pay to Claimant compensatory damages in the amount of $2,217,241.00 **based upon the principles of respondeat superior.** It is noted that this amount reflects deduc-

tions for the amounts previously paid by settling respondents.

2. Respondents Walsh Manning and Skelly be and hereby are jointly and severally liable for and shall pay to Claimant interest in the amount of $548,767.00.

3. Respondents Walsh Manning and Skelly be and hereby are jointly and severally liable for and shall pay to Claimant the sum of $250.00 to reimburse Claimant for the non-refundable filing fee previously paid to NASD Dispute Resolution, Inc. (emphasis added)

The Award is problematic. In addition to asserting various grounds of primary liability as to Skelly, Hardy asserted in his Statement of Claim that Skelly was liable to him "in [Skelly's] capacity as the Chief Executive Officer and Manager of Walsh Manning, under Section 20 of the Securities & Exchange Act [sic] of 1934 and under the common law theory of respondeat superior." But in their post-hearing brief, the respondents argued that Skelly could not be liable to Hardy under respondeat superior because of the undisputed fact that Skelly is an employee, not an officer, of Walsh Manning. In his own post-hearing brief, Hardy asserts respondeat superior as a ground for liability *only* with respect to Walsh Manning, but he does not explicitly repudiate the assertion of respondeat superior as to Skelly. Confusingly, Hardy also asserts in his post-hearing brief that Skelly and others "are secondarily liable for Cassese's misconduct. Such secondary liability is based on Section 20 of the Securities Exchange Act of 1934 and agency law." In any event,

---

**2.** Skelly argues that the inequity of Cassese's settlement is "obvious" because, in light of the arbitration panel's finding of liability against Walsh Manning and Skelly, the settlement has allowed Cassese to "walk[ ] away paying only a small percentage of [Hardy's]

damages, in exchange for pointing the finger at Skelly and Walsh Manning." Skelly Brief at 9, n. 3. However, Skelly asserts no basis for finding the settlement to have been illegal, and he does not assert that it provides any basis for vacating the Panel's award.

the only basis of liability as to Walsh Manning and Skelly stated in the Award is secondary liability pursuant to respondeat superior.

Hardy moved in the district court to confirm the Award, and Walsh Manning and Skelly cross-moved to vacate the Award. Judge Lynch found all of Walsh Manning's and Skelly's claims to be wholly without merit except for the application of respondeat superior liability to Skelly. Judge Lynch held that although "Skelly was the CEO of Walsh Manning, he was technically only an employee, and vicarious personal liability cannot be imposed on individual supervisors based solely on the conduct of their underlings, when both are fellow employees of a common employer." *Hardy v. Walsh Manning Securities LLC,* 2002 WL 2031607 at *4 (S.D.N.Y. Sep.5, 2002). Judge Lynch nevertheless concluded that the language employed by the Panel in the Award as to Skelly's liability can be read to mean that the Panel did not find Skelly liable pursuant to respondeat superior alone:

> It is possible to find that the phrase "based upon ... respondeat superior" refers not to the finding of *liability* of each respondent, but to the conclusion that both respondents are "jointly and severally liable." This is essentially the reading adopted by petitioner, who would read the sentence as saying, "[Skelly is liable in damages, based on his own conduct, and] both respondents are jointly and severally liable, based on respondeat superior." While the words chosen may not be the most direct or grammatical way of expressing this thought, it is worth noting that the sentence ("Respondents ... be and hereby are ... liable") isn't grammatical in the first place.

*Id.,* at *5 (emphasis in original).

Finding therefore that Hardy's reading of the Award was "a plausible one ...

supported by a permissible view of the evidence," Judge Lynch ordered that the Award should be enforced as written. *Id.* at *6.

Skelly immediately moved for reconsideration, asserting that the Award should be remanded to the Panel for an explanation of the grounds of his liability. In his unreported denial of the motion, Judge Lynch held it would not be proper to remand the Award to the Panel for clarification as to its intent regarding Skelly's liability. Such action might be warranted, Judge Lynch held, if there were ambiguities in the nature and extent of the relief awarded. Here, however, "[t]he arbitrators were crystal clear in directing the respondents to pay a sum certain."

## DISCUSSION

**I. Was the District Court Correct in Holding That the Panel's Award Should Be Confirmed as Written?**

▆▆▆ As a general matter, "[a]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir.1997) (citations and internal quotation marks omitted). It is nevertheless the case that an arbitration award should not be confirmed where it can be shown that the arbitration panel acted in "manifest disregard of the law" to such an extent that "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators ... [was] well defined, explicit, and clearly applicable." *DiRussa v. Dean Witter Reynolds Inc.,* 121 .F.3d 818, 821 (2d Cir.1997), *cert, denied,* 522 U.S. 1049,

118 S.Ct. 695, 139 L.Ed.2d 639 (1998) (citation and internal quotation omitted).

■ We are fully aware that this is not an easy standard to meet for a party challenging confirmation of an arbitration award. Indeed, we are able to quantify this difficulty, thanks to the recent efforts of another panel of our Court. In *Duferco International Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir.2003), it was calculated that "since 1960 we have vacated some part or all of an arbitral award for manifest disregard in ... four out of at least 48 cases where we applied the standard." (collecting cases) Yet, even though this standard "gives extreme deference to arbitrators," *DiRussa*, 121 F.3d at 821, we believe that it is satisfied here, at least to the extent of warranting a remand of the Award to the Panel for clarification of what it intended regarding Skelly's liability.

■ It is certainly possible to find that the Panel disregarded the principles of respondeat superior, the same principles that it purported to apply. Although the Panel did not explicitly say so, it is agreed by all parties that these are meant to be the principles of New York law. The principle that respondeat superior is a form of secondary liability that cannot be imposed upon the fellow employee of a wrongdoer is certainly well-defined and explicit in New York. *See Patton v. Dumpson*, 498 F.Supp. 933, 943 (S.D.N.Y.1980) (doctrine "does not apply to executive personnel who fall into the category of employees"); 53 N.Y.Jur.2d, *Employment Relations*, § 328 (April 2003) (doctrine is "confined in its application to the relation of employer and employee, or of principal and agent"). Indeed, it has been noted that the very possibility of liability *between* employees for acts committed in connection with their employment was an anomalous development in New York's tort law meant as a means of limiting the reach of respondeat superior liability. That is, "[t]he onerous 'fellow-servant' rule, [was] developed at common law to preclude respondeat superior claims against an employer by an employee injured in the workplace due to the negligence of a co-worker." *Cooper v. City of New York*, 81 N.Y.2d 584, 601 N.Y.S.2d 432, 437, 619 N.E.2d 369 (1993) (Titone, J., dissenting). This development is indicative of the history of American tort law in general. *See* Christopher L. Tomlins, *Law, Labor, and Ideology in the Early American Republic*, 331–84 (1993).

As already noted, the Panel was made aware of the argument that Skelly could not be found liable for the acts of Cassese because both men were employees of Walsh Manning. Walsh Manning explicitly made this argument in their post-hearing brief, and Hardy impliedly agreed by raising respondeat superior as to Walsh Manning, but remaining silent as to Skelly's liability pursuant to the doctrine. As a factual matter, Skelly's status as an employee is not contested. This is therefore not a case like *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 216 (2d Cir.2002), where the Court held that an arbitration award in a contract dispute could not be overturned because the arbitration panel did not arrive at "the optimal construction" of the contract at issue. It was enough that the interpretation was supportable upon the facts of the case "*as those facts have been determined by the arbitrator.*" *Id.* at 213 (emphasis in original; collecting cases) In the instant case, by contrast, it appears that no reading of the facts can support the legal conclusion Skelly is liable under respondeat superior.

Judge Lynch asserts that the Award can be read as holding that Skelly is liable "based on his own conduct." This reading reduces the Panel's explicit reference to respondeat superior to "a stray and unnec-

essary remark," as Judge Lynch terms it. But this reading is simply untenable. The Award is *silent* as to the issue of Skelly's primary wrongdoing, and it states no other ground of liability but respondeat superior. The untenability is implicitly confirmed by Hardy himself. He asserts that "[t]he Panel elected not to discuss the rationale for its finding of primary wrongdoing." Hardy Brief at 3. But he later acknowledges that "[t]he Award is completely silent regarding the primary wrongdoer." Hardy Brief at 14. Hardy gets it right the second time. The Panel made no finding of primary wrongdoing.

■ Judge Lynch himself acknowledges that "[t]he arbitrators nowhere made a finding that Skelly had committed no misconduct." 2002 WL 2031607 at *6. He nevertheless asserts that it proper to infer that the arbitrators concluded that Skelly *had* committed misconduct because this is "a permissible view of the evidence." *Id.* But this "permissible" view is by no means necessarily equivalent to the view of the evidence actually taken by the Panel and, according to *Westerbeke*, the latter view is dispositive. That is, a reviewing court is bound to accept the facts considered by an arbitrator "*as those facts have been determined by the arbitrator.*" 304 F.3d at 213.

Indeed, Judge Lynch found that Walsh Manning's assertion that *it* could not properly be found liable under respondeat superior is without merit because the assertion "ask[ed] the Court to reassess the evidence." 2002 WL 2031607 at *4. But what is Judge Lynch's holding that Skelly was found to be primarily liable? It is an assessment of the evidence. We note also that Hardy's brief is largely devoted to assessing the evidence so as to assure this Court that there is indeed substantial evidence in the record to find that Skelly is primarily liable. Such evidence may exist.

But since the award makes no mention of it, we will not assess this evidence.

■ Judge Lynch is correct that "[t]he arbitrators were crystal clear in directing the respondents to pay petitioner a sum certain." But, once again, it is also crystal clear that the award states no other basis for liability than respondeat superior. The district court correctly found that a court must "confirm [an arbitrator's] award if [it is] able to discern any colorable justification for the arbitrator's judgment, even if that reasoning would be based on an error of fact or law." *Westerbeke*, 304 F.3d at 212, n. 8. There may indeed be more than enough evidence in the record to find that Skelly should have been found primarily liable. But that is not what "the arbitrator's judgment" is in the instant case. The arbitrator's judgment is that Skelly was liable "upon the principles of respondeat superior," and no one points us to any evidence in the record that provides a colorable justification for this conclusion.

The instant case stands in interesting contrast to this Court's recent decision in *The GMS Group, LLC v. Benderson*, 326 F.3d 75 (2d Cir.2003). In that case, as in the instant case, the petitioner "advanced numerous theories of recovery" in an arbitration proceeding. *Id.* at 77. But the arbitration panel in that case "did not issue a written opinion when making its award." *Id.* The Court observed that "especially where there is no written opinion, we have stated '[i]f *a* ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed.'" *Id.* at 78 (quoting *Fahnestock & Co. v. Waltman*, 935 F.2d 512, 516 (2d Cir.1991); emphasis in original). The Court concluded that, if one of the theories of recovery preferred by the petitioner could have properly formed the basis for the arbitration panel's award, it is of no moment that other theories might not properly be a

basis of liability. *Id.* at 81. In our case, the Panel did write an opinion, at least to the extent of specifying a theory of liability, and remaining silent as to the other theories of liability proferred by Hardy. To infer from the facts that Skelly was also liable under any other theory of liability is to supply an alternate theory of liability where the Panel has already supplied one.

This case is also easily distinguishable from *Duferco International Steel Trading.* The facts in that case, which the Court merely reported and did not evaluate, included two separate arbitration proceedings—the first in London and the second in New York- and two separate charter contracts. The Court was reviewing the results of the New York arbitration, and found that the panel there, which was not unanimous, had "somewhat confusingly" found that a party not present at the London arbitration proceeding was bound by the damage award made in that proceeding, but not by the award of attorneys' and arbitrators' fees made by the first panel. 333 F.3d at 387. The Court further asserted that "[t]he precise rationale employed by the New York arbitrators is difficult for us to discern." *Id.* at 391. But the Court concluded that there existed a "plausible reading of the award [which] resolves its apparent contradiction." *Id.* at 392. That is, while acknowledging that the New York award "only arguably conforms to legal standards," it "was not irrational or inexplicable." *Id.* In our case, we have crossed the line from confusion to inexplicability, and we can discern no reading of the Award that resolves its apparent contradiction with the law of respondeat superior.

Further, although discussed neither by the district court nor—for reasons we cannot fathom—by Skelly in his brief, there is evidence in the record that supports the conclusion that the Panel may have intended to hold that Cassese was the sole primary wrongdoer. In their post-hearing memorandum, Walsh Manning and Skelly informed the Panel that there existed an indemnity agreement between them and Cassese. Pursuant to that agreement, Cassese agreed to reimburse Walsh Manning and Skelly for any of his acts for which they were found secondarily liable. Walsh Manning and Skelly also told the Panel that they had already brought an arbitration proceeding against Cassese and his partner in which they sought indemnification "for, among other things, any award issued against them in the case before this panel." Accordingly, they made the following request:

In order to perfect their claim in [the other] arbitration, Walsh Manning and Mr. Skelly need to make clear to that panel the basis for any award this panel may render against them. In this case, Claimant has claimed against the Firm and Mr. Skelly for fraud (misrepresentations and omissions; manipulation; excessive commissions; and suitability), both by Mr. Skelly directly and indirectly (under the theory of control person liability), and against Walsh Manning under the theory of respondeat superior. Claimant also has claimed against both Mr. Skelly and the Firm for failure to supervise. The panel in the [other arbitration] might determine that the failure to supervise claim does not fall within the indemnification provision of the branch agreement, even though it would not have arisen but for Mr. Cassese's solicitation of funds from Mr. Hardy, on the grounds that liability does not result from Mr. Cassese's act of failing to supervise.

In order to obviate any such issue at the outset, we respectfully request that, if the panel determines to make an award against Mr. Skelly and/or Walsh

Manning, the award specify with respect to these two respondents the basis on which each claim has been found against them and damages are awarded (*e.g.*, Mr. Skelly for "X" amount on the "Y" claim, for the conduct of Mr. Cassese.) Walsh Manning and Skelly go on to acknowledge that this request might be asking the Panel to do something out of the ordinary, but they assert that because "such an explication may result in the real responsible party—Mr. Cassese—being held truly responsible for his own conduct, we submit that [it] is warranted." We were informed at oral argument that the arbitration proceeding against Cassese has been concluded, but it is uncontested that it was pending when the Award was issued.

It may be that, in making the Award that it did, the Panel was acting in response to the request of Walsh Manning and Skelly that the grounds of their liability as to Hardy be specifically designated. That is, the Panel may have intended to assert that Cassese was the only primary wrongdoer. "Assuming that the panel in the instant case did intend" such a holding, "the district judge clearly frustrated that intent." *Americas Ins. Co. v. Seagull Compania Naviera, S.A.*, 774 F.2d 64, 67 (2d Cir.1985). And if the Panel did intend to hold that Cassese was the only primary wrongdoer, we are left with the question of how Skelly can be held liable under a theory of respondeat superior. In light of this request, and in light of the manner in which the Award is phrased, the district court was incorrect in holding that the Award can be enforced as written.

■ It is true that "[w]e are obliged to give the arbital judgment the most liberal reading possible." *Westerbeke*, 304 F.3d at 212n.8. The most liberal reading of the award in this case, however, simply cannot expunge its statement that Skelly was found liable under principles of respondeat superior. It may very well be that the district court was correct when it characterized the statement as "a stray and unnecessary remark", but only the Panel can tell us this, especially in light of the fact that respondeat superior is plainly the only basis of liability set forth in the award. Again, it is at least possible that the statement at issue is not "a stray and unnecessary remark," but is instead an intentional statement made in response to a request by Skelly and Walsh Manning that the grounds of their liability be specified.

Finally, we disagree with Judge Lynch's contention that there is anything relevant in the fact that the Award "isn't grammatical". 2002 WL 2031607 at *5. The Award may fail in terms of usage, but it succeeds in stating a ground of liability in a manner that is manifestly intelligible.

It is true that the Award does not contain anything that can be termed "legal reasoning". But it *does* contain an explicit legal conclusion. To this extent, the award is not ambiguous and is not susceptible to more than one plausible reading. Nor does it rest on "a colorable interpretation of the law." *Westerbeke*, 304 F.3d at 213 n. 8. The award indeed contains a fundamental mistake of law.

## II. Since This Court Holds That the Award Cannot Be Enforced as Written, What Should Be Done?

■ Voiding an award because an arbitration panel acted in manifest disregard of the law "requires more than a mistake of law or a clear error in fact finding." *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir.2002); *see also New York Tel. Co. v. Communications Workers of Am. Local 1100, AFL–CIO Dist. One*, 256 F.3d 89, 92–93 (2d Cir.2001) (voiding award where arbitration panel explicitly considered binding Second Circuit

precedent and refused to apply it). We are reluctant to announce that the Award is void outright as written.

█ Although certainly not the normal course of things, we do have the authority to remand to the Panel for purposes broader than a clarification of the terms of a specific remedy. That is, we have the authority to seek a clarification of whether an arbitration panel's intent in making an award "evidence[s] a manifest disregard of the law." *Americas Ins. Co.*, 774 F.2d at 67. The Panel should be afforded such an opportunity. In *Americas Insurance*, 774 F.2d at 67, we directed a district court to remand awards to an arbitration panel for clarification of whether the panel intended awards to be subject to principles of subrogation. We believe that this is the proper result here.

It is of no moment that, as Hardy points out, Skelly only raised the possibility of remand on his motion for reconsideration. We do not mean to encourage such a course of action, but the remand in *Americas Insurance*, was, to all indications, effected *sua sponte*. And Judge Lynch's fear that remand here "would in effect require arbitrators to provide explicit and correct legal analyses of their conclusions—something the law does not require" strikes us as overstated. 2002 WL 2031607 at *7. In this case, the Panel chose to make an explicit legal conclusion in the award, a conclusion that may very well be wrong. It should be given the opportunity to explain themselves. We are emphatically opening no floodgates here. We simply wish for more clarity because we think that substantial financial liability should not be imposed upon an individual without a clear basis in law.

The inquiries to the Panel on remand are not extensive and its response need not be, and should not be, detailed. We merely ask the Panel to do the following:

(1) Confirm that Skelly is liable only under the principles of respondeat superior because there are indeed facts which have not been brought to our attention which support this holding; (2) In the alternative, assert that some other ground of secondary liability applies to Skelly; or (3) Failing both of these, acknowledge that it erred in finding Skelly secondarily liable and that the record does or does not support a finding that Skelly is primarily liable to Hardy.

## CONCLUSION

The judgment of the district court is AFFIRMED in so far as the award applies to Walsh Manning. In so far as the award applies to Skelly, the district court's judgment is VACATED and REMANDED for proceedings consistent with this opinion.

STRAUB, Circuit Judge, dissenting.

By remanding to the arbitration panel for clarification as to the underlying legal basis for liability, the majority, in my most respectful view, disregards the well-settled precedent establishing our severely limited review of arbitration awards. It is precisely because arbitration is designed to provide parties with an expedited process for conclusively resolving their disputes, that judicial review of arbitration awards is so narrow. *See Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir.) ("[T]he court's function in confirming or vacating an arbitration award is severely limited. If it were otherwise, the ostensible purpose for resort to arbitration, i.e., avoidance of litigation, would be frustrated."), *cert. denied*, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960). Accordingly, I dissent.

While the majority fully recognizes that substantial deference must be given to the

arbitrator's finding of liability under the governing manifest disregard standard, it fails to acknowledge that equal deference must be accorded in interpreting the arbitration award itself. As this Court has recently reaffirmed, "where an arbitral award contains more than one plausible reading, manifest disregard cannot be found if at least one of the readings yields a legally correct justification for the outcome." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir.2003).[1] Thus, mere ambiguity in the award itself is not a basis for denying confirmation, so long as the award can be interpreted as having a colorable factual or legal basis. *See, e.g., Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 213 n. 8 (2d Cir.2002) ("[W]here the arbitral tribunal has handed down an opinion open to more than one possible reading, we will confirm the award so long as, under one of these readings, the judgment rests upon a colorable interpretation of law."). Moreover, in interpreting an arbitration award, deference mandates that "we look only to *plausible* readings of the award, and not to *probable* readings of it." *Duferco*, 333 F.3d at 392 (emphasis added). Our goal, then, is not to discern the actual subjective intent of the arbitration panel, but only to determine if the award can be sustained under any plausible reading.[2] *See id.* (noting an arbitration award need not be construed to reflect the arguments originally made before the arbitration panel).

Although the majority suggests that this is somehow an extraordinary case, we are presented at most with an arbitration award that is ambiguous and susceptible of more than one plausible reading. Because the award need not be read as stating that respondeat superior is the sole basis for Skelly's primary liability, affirmance is required under the established standard of this Circuit. Even if the majority is correct that there is no ambiguity, and the award must be read as erroneously holding Skelly liable under the principles of respondeat superior, then the appropriate remedy is to vacate the judgment of the District Court and remand for vacatur of the arbitration award. To suggest that we may remand for clarification despite finding that the arbitrator has manifestly disregarded the law has little support in prior precedent. Indeed, such a rule fatally frustrates the very goals which arbitration seeks to advance: the efficient resolution of disputes and the avoidance of prolonged expensive litigation.

## I.

In this case, the disputed portion of the arbitrators' decision simply states: "Walsh Manning and Skelly be and hereby are jointly and severally liable ... based upon the principles of respondeat superior." The majority's interpretation, while conceivable, ignores the fact that the critical

1. The majority notes that *Duferco* is "easily distinguishable" on its facts. While that may be so, the fundamental legal principles articulated in the opinion are nonetheless relevant.

2. By consenting to arbitration, the parties also consent to restricted judicial review with the full awareness that the arbitration award may be confirmed even if there is substantial ambiguity or doubt as to the arbitrator's reasoning or findings. *See Klumpe v. IBP, Inc.*, 309 F.3d 279, 285 (5th Cir.2002) ("By contracting for arbitration, [i]t is presumed that the parties intended to relinquish their right to appeal the merits of the dispute ....") (internal quotation marks omitted).

"To interfere with this process" by demanding a clarity of decision which the arbitrator has no obligation to provide "would frustrate the intent of the parties, and thwart the usefulness of arbitration, making it 'the commencement, not the end, of litigation.'" *Duferco*, 333 F.3d at 389 (quoting *Burchell v. Marsh*, 58 U.S. (17 How.) 344, 349, 15 L.Ed. 96 (1854)).

phrase "based upon the principles of respondeat superior" may simply explain the basis for Walsh Manning's joint and several liability, without referring to the basis for Skelly's primary liability. Indeed, the phrase may indicate Walsh Manning's liability for *Skelly's* actions, not just Cassese's wrongful conduct, based upon the theory of respondeat superior. In other words, the award may specify the form of liability, joint and several, while remaining completely silent as to the underlying claims on which Skelly was actually found liable.

Not only is this a *plausible* interpretation of the decision, but also a completely *probable* one, for Hardy presented substantial evidence during the arbitration hearing that Skelly, who was Cassese's direct supervisor, failed to properly supervise Cassese, that Skelly was personally aware of Cassese's unauthorized trading, and that Skelly violated federal securities laws by engaging in direct market manipulation. In addition, as the majority points out, Hardy did not argue that Skelly faced direct liability on the basis of respondeat superior in his post-hearing brief, an argument, which nonetheless, Skelly directly refuted in his opposing brief. Finally, although Walsh Manning and Skelly did request that the Panel specify the damages awarded as to each particular claim for indemnification purposes, arbitrators have no obligation to provide such explanations for their decisions. *See, e.g., Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 203, 76 S.Ct. 273, 100 L.Ed. 199 (1956) ("Arbitrators ... need not give their reasons for their results ...."); *Sobel v. Hertz, War-*

*ner & Co.*, 469 F.2d 1211, 1214 (2d Cir. 1972) ("[T]he Supreme Court has made it clear that there is no general requirement that arbitrators explain the reasons for their award."). Thus, the Panel could indicate the basis for finding joint and several liability without further clarifying the claims on which it found primary liability. Although the majority's reading of the award would have great force in a context where the decision-maker is required to state the grounds for its decision, such is not the case in the arbitration context. Accordingly, we cannot simply assume that because the Panel mentioned respondeat superior in the context of finding joint and several liability, that respondeat superior must therefore be, by elimination, the only possible basis for primary liability against Skelly.[3]

As the majority notes, we are bound to review the facts as they have been determined by the arbitrator. In this case, however, the Panel simply stated its final decision in one sentence; it did not make explicit findings of fact, nor did it outline its legal reasoning. At most the Panel's decision is ambiguous. However, as Hardy presented ample evidence supporting Skelly's independent liability under a number of theories, and since none of these theories was explicitly rejected by the Panel, it is impossible to sustain Skelly's contention that the only plausible reading of the arbitration award is that he was held liable solely, and erroneously, on a theory of respondeat superior.

## II.

In addition, by remanding the case to the arbitration panel for further clarifica-

---

**3.** For example, if the award read: "We find Skelly liable for engaging in market manipulation and for making fraudulent misrepresentations. Respondents Walsh Manning and Skelly be and hereby are jointly and severally liable for and shall pay Hardy compensatory damages," the majority would confirm the award. Yet the Panel has no obligation to give the type of explanation offered in the first sentence. Thus, we cannot logically infer that the absence of such an explanation indicates that the Panel reached a fundamentally erroneous conclusion of law.

tion, the majority suggests that the real problem with the award is not an erroneous application of law, but instead a lack of certainty as to the grounds for the arbitration decision. Because "[w]e are obliged to give the arbitral judgment the most liberal reading possible," *Westerbeke,* 304 F.3d at 212 n. 8, and to uphold ambiguous awards that can plausibly be read to have a colorable legal justification, *see Duferco,* 333 F.3d at 390, such lack of certainty does not bar confirmation. While it may be tempting to remand to ensure that no actual error took place, to do so defies the commercial expectations of the parties and ignores the deference we must exercise in reviewing arbitration awards.

Moreover, if the award is in manifest disregard of the law, what purpose could be served by a remand? The majority suggests that vacating an arbitration award requires "more than a mistake of law," *Goldman v. Architectural Iron Co.,* 306 F.3d 1214, 1216 (2d Cir.2002), but that is simply a statement of the manifest disregard standard itself, not an additional threshold for vacating the award where manifest disregard has been demonstrated.

Although we have stated that reviewing courts "may remand awards to arbitrators to clarify the meaning or effect of an award," *Siegel v. Titan Indus. Corp.,* 779 F.2d 891, 894 (2d Cir.1985) (per curiam), such remand is appropriate "so that the court will know exactly what it is being asked to enforce." *Americas Ins. Co. v. Seagull Compania Naviera, S.A.,* 774 F.2d 64, 67 (2d Cir.1985); *see also New York Bus Tours, Inc. v. Kheel,* 864 F.2d 9, 12 (2d Cir.1988) ("When an arbitration award provides no clear instruction as to how a court asked to enforce the award should proceed, the court should remand to the arbitrator for guidance."); *Colonial Penn Ins. Co. v. Omaha Indem. Co.,* 943 F.2d

327, 334 (3d Cir.1991) ("[T]he limited purpose of such a remand ... serves the practical need for the district court to ascertain the intention of the arbitrators so that the award can be enforced ....."). Here, the majority would expand the limited circumstances in which remand is warranted to encompass a lack of clarity in the arbitrator's finding of liability itself—a step which would clearly interfere with the arbitral process and directly contradict our prior precedent which holds that an ambiguous award may be confirmed, so long as any plausible reading of the award is legally sustainable. *See Duferco,* 333 F.3d at 390; *Westerbeke,* 304 F.3d at 212–13 n. 8.

### III.

In sum, in "wish[ing] for more clarity," the majority's decision overlooks our limited role in reviewing arbitration decisions and encourages the very type of protracted litigation that arbitration seeks to avoid.

For all of the foregoing reasons, I respectfully dissent and would affirm the decision of the District Court.