11-848-cv (L)
In re: Douglas E. Palermo

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2011

(Argued May 16, 2012              Decided: January 7, 2014)

Docket Nos. 11-848-cv(L), 11-4018-cv (Con)

_____


IN THE MATTER OF DOUGLAS E. PALERMO,

*Debtor*.

_____

DAVID R. KITTAY, TRUSTEE,

*Plaintiff-Appellee*,

-v-

JOSEPH KORFF,

*Defendant-Appellant*.

_____


Before: KEARSE, POOLER, and LIVINGSTON, *Circuit Judges*.

1

Appeal from a judgment of the United States District Court for the Southern District of New York (Robert P. Patterson, Jr., *J.*), entered pursuant to a jury verdict in favor of Plaintiff-Appellee David Kittay on his claims that Defendant-Appellant Joseph Korff had received fraudulent transfers under New York's Debtor and Creditor Law Sections 273, 274, 275, and 276 from Debtor Douglas Palermo. Korff argues that (1) the complaint against him was untimely; and (2) the district court erred in failing to provide a rationale for its award of prejudgment interest running at New York State's statutory rate of 9 percent per annum, running from the date of the fraudulent transfer. We conclude that the bankruptcy judge entered a de facto severance pursuant to Bankruptcy Federal Rule of Civil Procedure 7021, making the refiled complaint timely. We vacate the award of prejudgment interest, and remand to the district court for further proceedings consistent with this opinion.

AFFIRMED in part,  VACATED and REMANDED in part.

_____

CARL W. OBERDIER (Kellen G. Ressmeyer, *on the brief*), Oberdier Ressmeyer LLP, New York, N.Y.,  *for Defendant-Appellant*.

LITA BETH WRIGHT (Thomas M. Monahan, *on the brief*), Storch Amini & Munves PC, New York, N.Y., *for Plaintiff-Appellee*.

2

POOLER, *Circuit Judge*:

Debtor Douglas Palermo filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.*, in the Bankruptcy Court for the Southern District of New York on October 14, 2005. Plaintiff-Appellee David Kittay was appointed trustee of Palermo's estate in bankruptcy. On October 12, 2007, Kittay brought proceedings against Defendant-Appellant Joseph Korff and a number of other persons and entities, alleging that these defendants had received fraudulent transfers from Palermo prior to his Chapter 7 filing. Subsequent to a request from the Bankruptcy Court, which considered some of the parties and claims misjoined, Kittay amended the complaint to drop all parties but Palermo; he then refiled separate complaints against each group of defendants. The second complaint against Korff was filed outside the limitations period. Kittay's claims of fraudulent conveyance against Korff under New York's Debtor and Creditor Law ("DCL") §§ Sections 273, 274, 275, and 276 (McKinney 2013) and 11 U.S.C. §§ 544(b)(1) and 550 were tried before a jury in the Southern District of New York, which found in favor of Kittay on all counts. Korff now appeals. He argues, inter alia, that the complaint against him was

3

untimely and that the district court erred in failing to articulate why it applied New York law in the prejudgment interest calculation. We conclude, however, that the bankruptcy court entered a de facto Rule 21 severance, and so the refiled complaint was timely. We also hold that, regardless of whether state or federal law governs the award of prejudgment interest here, the determination as to such an award was a matter for the district court's exercise of discretion. However, because the district court gave no indication that it knew that it had discretion we remand for the district court either to (1) exercise its discretion, or (2) explain that it in fact knew of and exercised its discretion in the first instance, and to articulate its reasons for any grant of prejudgment interest. The remainder of Korff's claims have been considered and addressed in a summary order published contemporaneously with this opinion. Accordingly, the judgment of the district court is AFFIRMED in part, VACATED and REMANDED in part.

## BACKGROUND

Debtor Douglas Palermo, "a self-employed real estate consultant," filed for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.*, in the Bankruptcy Court for the Southern District of New York on October 14, 2005. Plaintiff-Appellee David Kittay was appointed trustee of Palermo's estate

4

in bankruptcy on January 23, 2006, after the initial trustee passed away. On October 12, 2007, two days before the statute of limitations period ended, Kittay filed proceedings, pursuant to 11 U.S.C. §§ 544(b)(1) and 550[1], in the Bankruptcy Court, against Defendant-Appellant Joseph Korff ("Korff") and a number of other persons and entities. Kittay alleged that these defendants had received fraudulent transfers pursuant to DCL Sections 273, 274, 275, and 276, from Palermo prior to his Chapter 7 filing.[2] Subsequent to a request from the Bankruptcy Court, which considered some of the parties and claims misjoined, on January 7, 2008, Kittay amended the complaint to drop all parties but Palermo. He then refiled separate complaints against each group of defendants. In August of 2008, Korff moved, pursuant to 28 U.S.C. § 157(e) and Federal Rule of Bankruptcy Procedure 5011, to withdraw the reference from the Bankruptcy

---

[1] Additional claims pursuant to 11 U.S.C. § 548 were dismissed on Kittay's motion before trial.

[2] We take judicial notice of the fact that Palermo was ultimately denied a discharge in bankruptcy as a result of these fraudulent conveyances, including the transfers at issue here. *Doubet, LLC v. Palermo* (*In re Palermo*), 370 B.R. 599, 613-14 (Bankr. S.D.N.Y. 2007). We take notice of this fact "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (internal quotation marks omitted).

Court (Adlai Hardin, *J.*), and the proceedings against Korff were transferred to the District Court for the Southern District of New York.

Under Section 544(b)(1) of the Bankruptcy Code, "the trustee [of an estate in bankruptcy] may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C. § 544(b)(1). The "applicable law" in determining which obligations are voidable under Section 544(b)(1) is often state law. *See, e.g., In re Adelphia Recovery Trust*, 634 F.3d 678, 691 n.6 (2d Cir. 2011) (noting that "state laws governing fraudulent conveyances . . . may be invoked in federal bankruptcy proceedings by operation of 11 U.S.C. § 544(b)(1)"); *In re NextWave Personal Commc'ns, Inc.*, 200 F.3d 43, 49 (2d Cir. 1999) ("Applicable law [under Section 544(b)] includes various state fraudulent conveyance statutes . . . . "). Pursuant to Section 544(b)(1), Kittay alleged that Korff, a long-time friend and associate of Palermo, had received fraudulent transfers within the meaning of DCL §§ 273, 274, 275, and 276, prior to Palermo's Chapter 7 filing. Sections 273-275 define constructive fraud:

> Under the DCL, a conveyance by a debtor is
> deemed constructively fraudulent if it is made
> without "fair consideration," and (*inter alia* ) if

6

one of the following conditions is met: (i) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274; or (iii) the transferor believes that it will incur debt beyond its ability to pay, DCL § 275.

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 53 (2d Cir. 2005); *see also* DCL §§ 273, 274, 275. Section 276 governs actual fraud, providing that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." DCL § 276.

The trial evidence reflected that, in July 2004, Palermo arranged to assign to Korff $300,000 of a larger fee Palermo had earned for brokering a large real estate deal. At trial, Palermo gave vague testimony describing the services performed by Korff to earn fees. Korff's testimony on the topic was internally inconsistent and self-contradictory. Korff testified both that he was "entitled, because of [his] participation in the transaction" to the fee, and that it was in

7

repayment for loans[3]—as to which there was no documentation— that he had made to Palermo during their long association. Palermo likewise testified both that Korff fully earned the fee and that it was given to extinguish antecedent debts.

On October 19, 2010, about one week before trial was set to begin, Korff moved to dismiss the complaint as barred by the statute of limitations. The district court denied the motion, finding that equitable tolling saved Kittay's filing. The jury found in Kittay's favor on all counts. After trial, Korff moved for judgment notwithstanding the verdict pursuant to Federal Rule of Civil Procedure 50(b), or alternatively, for a new trial pursuant to Rules 50(b) and 59(a). The district court denied both of these motions. On November 4, 2010, Korff moved for reconsideration of the district court's prior denial of the motion to dismiss on timeliness grounds. The district court denied this motion in an opinion and order entered on February 7, 2011.

Korff now argues that the district court erred in denying his motion for judgment as a matter of law; that there were errors in the jury charge; that the

---

[3] Though Korff's general ledgers reflected some advances and checks to Palermo, no contemporaneous loan agreements were entered into evidence.

8

complaint was untimely and that the district court erred in applying equitable

tolling; and that the court erred in awarding prejudgment interest without

explanation.  We address the latter two contentions herein; the remainder of

Korff's arguments have been considered and addressed in a summary order filed

contemporaneously with this opinion.

**I. Timeliness**

**a.  Factual Background**

Korff argues that the district court erred in not dismissing Kittay's

complaint as untimely.  Some crucial facts are undisputed from the outset:

neither party disputes that the time for filing ended October 14, 2007,[4] or that the

complaint upon which trial proceeded in this case was not filed until January 7,

2008.  Nor is it disputed that Kittay originally commenced the action against

Korff and the other defendants in Bankruptcy Court on October 12, 2007, two

days before his time to file expired.  Although on its face  Kittay's complaint

---

[4] 11 U.S.C. § 546(a) generally provides that any action under Section 544 must be commenced by the later of two years after the entry of the order for relief or one year after the appointment or election of the first trustee.  11 U.S.C. § 546(a).   In this case, the order for relief was entered on Palermo's petition date, October 14, 2005, and the original trustee was appointed two days later.  The time to file thus ended two years after the entry of the order for relief—October 14, 2007.

against Korff may have seemed untimely, however, the proceedings in Bankruptcy Court giving rise to this facially late filing belie any conclusion that it was, in fact, untimely.

On November 27, 2007, all parties on the original complaint, except for Korff and another defendant, appeared in the Bankruptcy Court for the Southern District of New York. From the outset, the court questioned "the appropriateness or, indeed, the permissibility of lumping all these Defendants in one adversary proceeding." It indicated that separate adversary proceedings were "probably going to be necessary." When Kittay's counsel expressed concern about whether the refiled proceedings would be timely, the court stated "the statute of limitations will not be a problem because . . . to the extent that this Complaint was timely as to any of these people, a refiling will be timely, as well. So that should not be a – that will not be an issue." The court directed the parties to consider "an appropriate way to split [the claims] up" into separate complaints and adjourned.

The second proceeding in the bankruptcy court was held on December 11, 2007. Korff again did not appear, though process was complete as to Korff on December 6. As to remedying any misjoinder, Kittay's counsel told the court that

10

the parties had agreed to maintain one adversary proceeding solely against

Palermo and to split the remainder of the claims into four separate adversary

proceedings.   The other parties expressed their agreement, and the court

indicated that if the parties had come to an agreement, it would acquiesce in their

division.   Kittay's counsel and the court then had the following exchange:

> **The Court**:  Okay, as a mechanical matter then, I
> take it you would now file separate Complaints?
>
> **[Counsel for Kittay]**:  Yes, the understanding
> being, of course, that the statute of limitations
> would have been satisfied from filing the first
> Complaint.
>
> **The Court**:  Relating back to the initial Complaint,
> that's fine.

Judge Hardin directed that the new complaints be filed by January 7, 2008.  The

proceeding ended with the following exchange:

> **The Court**: . . . By the way, I guess once the new
> Complaints are filed, you should do an
> appropriate consent order terminating this initial
> adversary proceeding, but with a specific
> provision that the—I don't know quite how you
> word it, but that the new Complaints will relate
> back to the filing of this one, all right?
>
> **[Counsel for Kittay]**:  It is my intention, Your
> Honor, to just amend the Complaint in this action

11

so that it will only cost the— to avoid having to pay for another action.

**The Court**: Say again?

**[Counsel for Kittay]**: My intention was just to amend the Complaint in this action to eliminate—or would be to move—to proceed under this caption against Mr. Palermo and then to file the other.

**The Court**: All right, I see. Okay, so this action would not be terminated; this would just be amended to relate only to one set of Defendants?

**[Counsel for Kittay]**: Yes, that's correct, Your Honor.

**The Court**: Okay, that's fine. Very good. Thank you.

On January 7, 2008, Kittay filed an amended complaint which functionally dismissed all defendants except Palermo; that same day, he filed separate complaints against the other defendants. No consent was obtained prior to these filings. The amended complaint against Korff alleged that "Judge Hardin held that for purposes of the statute of limitations, the date of filing for the additional adversary proceedings would relate back to the date the Initial Adversary Proceeding was filed." No further motions were made as to timeliness until

12

October 19, 2010, around one week before trial, when Korff moved to dismiss the complaint as untimely. Kittay claimed in response that he was entitled to equitable tolling. Neither party produced the transcripts of the December 11 and November 27 proceedings at oral argument on October 22, 2010. The court reserved decision, and on October 25, 2010, immediately before trial began, the district court orally denied the motion to dismiss, indicating that equitable tolling was appropriate. After Korff's counsel objected that the basis for the court's determination was hearsay, Kittay's counsel proffered that she now had the transcript and would produce it, though she indicated it was consistent with the timeliness allegation in the original complaint. The court did not make any further ruling, and the trial began.

After trial, on November 4, 2010, Korff moved for reconsideration of the court's equitable tolling determination. Reviewing the transcripts of the bankruptcy court proceedings, the district court found that it was reasonable to read the transcripts to mean that the bankruptcy court required consent only if the initial adversary proceeding was terminated, and not, as actually occurred, if the initial complaint was amended to drop the misjoined parties. The district court indicated that it made its prior decision to toll the statute of limitations

13

because "the Plaintiff had not sat on his rights, had timely commenced the initial adversary proceeding, and . . . [because] there was no prejudice was suffered by the Defendant." The court also found that the bankruptcy court transcripts were not inconsistent with Kittay's previous position, and thus were not inconsistent with its original decision. Accordingly, it denied reconsideration. The court also held that the complaint was timely on an alternative ground, the relation back provision of Federal Rule of Civil Procedure 15(c). Korff appeals both of these determinations.

**b. Analysis**

We need express no view on Rule 15(c) or the applicability of equitable tolling, the two bases on which the district court found the complaint timely, because a clearly sufficient basis to affirm the district court is found in Federal Rule of Civil Procedure 21, which "applies in [bankruptcy] adversary proceedings" pursuant to Federal Rule of Bankruptcy Procedure 7021. Rule 7021 indicates that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. When faced with misjoinder, the Rule allows the bankruptcy court to drop a

14

party or sever claims. But the remedy for misjoinder is not, as the bankruptcy court's initial instruction suggested, dismissal of the *action*, which Rule 7021 specifically prohibits. *Id.*; *see also Clay v. Martin*, 509 F.2d 109, 113 (2d Cir. 1975) ("[T]he presence of 'improper parties' [is] . . . an invalid basis for dismissal of [a] complaint. Misjoinder . . . does not justify such an extreme sanction."); *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1249 (3d Cir. 1972) ("Misjoinder or non-joinder of parties is not ground for dismissal . The proper remedy in case of misjoinder is to grant severance or dismissal to the improper party if it will not prejudice any substantial right." (citation omitted)). The bankruptcy court's initial direction to the parties aimed at curing misjoinder—requiring dismissal of the complaint and refiling of separate complaints—was thus in violation of Rule 7021. Since the bankruptcy court clearly considered all claims appropriate to proceed and intended for them to do so, it should have ordered the misjoined parties to be severed. Had it done so explicitly, the complaint would unquestionably be timely, as the date of initiation for statute of limitations purposes would have been October 12, 2007, the undisputed timely filing date of the original action. Unlike a suit dismissed without prejudice, in which a suit "is treated for statute of limitations purposes as if it had never been filed," *Elmore v. Henderson*, 227 F.3d

15

1009, 1011 (7th Cir. 2000), "when a court 'severs' a claim against a defendant under [Rule 7021], the suit simply continues against the severed defendant in another guise. The statute of limitations is held in abeyance, and the severed suit can proceed so long as it initially was filed within the limitations period," *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006) (citations omitted).

We see no reason for a different result simply because the court did not expressly invoke Rule 7021. As an initial matter, we note Korff concedes that the bankruptcy court was "exercis[ing] [its] discretion under [Rule 7021]." Even absent such a concession, the record unequivocally reflects that what the bankruptcy court intended to do was to effectuate a severance under Rule 7021. "Nothing on the face of [Rule 7021, incorporating] Rule 21 indicates that it must be explicitly invoked in order to have effect. There must be, however, a strong indication that the judge intended to effect a severance." *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 145 n.6 (3d Cir. 1999). Here, "[a]lthough the [bankruptcy] court did not explicitly refer to [Rule 7021], we conclude that [it] clearly intended to sever." *Allied Elevator, Inc. v. E. Tex. State Bank of Buna*, 965 F.2d 34, 36 (5th Cir. 1992).

Here, the bankruptcy court indicated that the claims were misjoined and that separate adversary proceedings were "probably going to be necessary." It also unambiguously indicated that "to the extent that th[e original] Complaint was timely as to any of [the defendants], a refiling [would] be timely, as well." The court's clear intent was that the claims be separated and allowed to proceed as timely, based on the filing of the original complaint. It is by operation of Rule 7021 that this could be effectuated. Accordingly, we conclude that the bankruptcy court intended to and did effectuate a Rule 7021 severance. *See Allied Elevator*, 965 F.2d at 36; *United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983) (concluding from "judgments themselves, as well as from the context in which they were rendered, . . . that a Rule 21 severance was intended and purportedly effected by those judgments"); *Hebel v. Ebersole*, 543 F.2d 14, 16-17 (7th Cir. 1976) (interpreting ambiguous separation of claims as Rule 21 severance rather than separation for trial pursuant to Federal Rule of Civil Procedure 42(b)).

Korff's argument that he was dropped as a party pursuant to the Rule, rather than having the claims against him severed, is completely without merit. Such a claim is belied by the bankruptcy court's repeated assurances that the refiled complaints would be timely and the court's apparent acceptance of those

refiled complaints. The bankruptcy court's reassurances are particularly

meaningful in a case such as this where even a dismissal without prejudice after

October 14, 2007, would operate in effect as a dismissal with prejudice, since any

refiling would be outside of the statute of limitations and thus barred. The

bankruptcy court obviously intended for all the claims to proceed; thus it

intended to sever rather than drop any parties. The same facts also belie Korff's

argument that, even if the court intended to sever the claims, it did so only on the

condition that Kittay first obtain a consent order. The district court concluded

that the transcripts reflected that the bankruptcy court required a consent order

only if the original action were entirely dismissed, a finding with which we

agree. But even if we could not draw such a conclusion from the transcripts

themselves, we can certainly draw it from the fact that the bankruptcy court

apparently expressed no dissatisfaction when, ultimately, the newly severed

complaints were refiled without a consent order. Had such consent been

required by the court in order to persuade the court to sever, we have no doubt

that the bankruptcy court would have said so. The bankruptcy court entered a

de facto Rule 7021 severance; accordingly, we find no error in the district court's

refusal to dismiss the complaint as untimely.

18

## II. Prejudgment Interest

In entering judgment against Korff, the district court included an award for prejudgment interest:

> Plaintiff's motion for pre-judgment interest, pursuant to Fed. R. Civ. P. 59(e), dated February 7, 2011 is granted and the Clerk shall calculate and enter judgment with prejudgment interest on all sum awarded herein from July 29, 2004 at the statutory rate of nine percent per annum provided in the New York Civil Practice Law and Rules § 5004 in he amount of $177,090.41.

"The decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion, and will not be overturned on appeal absent an abuse of that discretion." *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1071-72 (2d Cir. 1995) (internal quotation marks omitted). Even as generous a standard of review as abuse of discretion, however, cannot be exercised on such a sparse record.

In his motion for prejudgment interest, Kittay argued he was entitled to prejudgment interest "as a matter of right," from the date of the fraudulent transfer, at the New York statutory rate of 9 percent per annum. (Memorandum of Law in Support of Plaintiff's Motion for Prejudgment Interest at 6-7). In opposition, Korff argued any prejudgment interest award rested entirely in the

court's discretion, and if made should run from the date of the commencement of the adversary proceeding at the federal rate. (Memorandum of Law in Opposition to Plaintiff's Motion for Prejudgment Interest at 1-4).

The question of whether prejudgment interest should be awarded in an avoidance and recovery action brought under federal bankruptcy law is an open one in our Court. Many of the courts in this Circuit look to the source of the law underlying plaintiff's claims: claims that arise out of federal law are governed by federal rules, claims arising out of state law are governed by state rules. *See, e.g., CNB Int'l, Inc. v. Kelleher (In re CNB Int'l, Inc.)*, 393 B.R. 306, 335-36 (Bankr. W.D.N.Y. 2008) (finding that because "the right to recover prejudgment interest on a fraudulent conveyance arises from that language in 11 U.S.C. § 550(a) which allows a trustee to recover 'the value' of the transferred property," any prejudgment interest must be determined by reference to federal law); *Geltzer v. Artists Mktg. Corp. (In re Cassandra Grp.)*, 338 B.R. 583, 600 (Bankr. S.D.N.Y. 2006) (looking to the "nature of the right asserted" and applying state law); *Comm. of Unsecured Creditors of Interstate Cigar Co. v. Interstate Distrib., Inc. (In re Interstate Cigar Co.)*, 278 B.R. 8, 26 (Bankr. E.D.N.Y. 2002) ("Because this [Section 544] action is predicated on New York substantive law, the rate of interest shall be dictated

by New York law as well."); *see also Goldman Sachs Execution & Clearing, L.P. v. The Official Unsecured Creditors' Comm.*, No. 10 Civ. 5622, 2011 WL 2224629, at *2 (S.D.N.Y. May 31, 2011) (if a case "ar[ises] under federal bankruptcy law[,] . . . the federal interest rate should apply."), *aff'd*, 491 F. App'x 201, 206 (2d Cir. 2012) (summary order). We agree this is the proper framework for the analysis.

Here, implicit in the district court's award of interest is its decision that state law formed the basis for its award, as the district court specifically referenced N.Y. C.P.L.R. § 5004. We find no fault with that determination. New York law provides that

> Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

N.Y. C.P.L.R. § 5001(a). Prejudgment interest was not available to Kitty as a matter of right under New York law, as the first part of Section 5001(a) is inapplicable here. Kittay's action against Korff was one to pursue the interests of the creditors, who had neither "title to, [n]or possession or enjoyment of,

21

property"; and there is no contract at issue. However, Kittay's action sounded in equity, and thus the district court was free to exercise its discretion to make an award pursuant to the second part of the statute.[5]

What is lacking in the district court's decision is any indication that the court appreciated that an award of prejudgment interest pursuant to New York state law implicated the court's discretion. The statute vests in the court discretion to award prejudgment interest in the first instance; and discretion as to the rate and date from which the interest run. Absent some explanation from the district court, we are unable to discern whether the district court thought it lacked discretion and made a mandatory grant of interest at New York's statutory rate of 9 percent per annum, or if it appreciated it had discretion to select an alternate rate and staring date from which the interest is to run. We emphasize that the district court is free, in the exercise of its discretion on remand, to award interest at the same rate and for the same interval.

---

[5] We note that this record may have permitted the district court to conclude that it possessed authority to award prejudgment interest under federal law pursuant to 11 U.S.C. § 550(a). An award of prejudgment interest based on federal law would also afford the district court discretion as to the rate and interval.

22

## CONCLUSION

The district court did not err in declining to dismiss the complaint as untimely, as the bankruptcy court's order constituted a de facto Rule 7021 severance. Nor did it err in applying state law to the award of prejudgment interest. However, in the absence of further explanation, we must remand for the court to either exercise its discretion or to explain that it was aware of and in fact exercised its discretion; the court should articulate its reasons for any grant of interest. The remainder of Korff's arguments have been considered in the summary order filed along with this opinion.

Accordingly, the judgment of the district court is hereby AFFIRMED in part, VACATED and REMANDED in part.